**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Bobbie Joe HODGES,
Defendant-Appellant.**

No. 38758.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 14, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Oct. 10, 1979.

Robert C. Babione, Public Defender, Terry Burnet, Asst. Public Defender, Cynthia S. Holmes, Special Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Defendant appeals from a judgment of conviction of second degree murder and a sentence of forty years in the Missouri Department of Corrections.

Appellant contends the trial court erred in: (1) failing to grant appellant's motion for a mistrial when the state in its opening statement said that appellant was given his *Miranda*[1] rights because it was an improper comment on appellant's right to remain silent; (2) overruling appellant's objection to the state's calling appellant's wife as a witness; (3) denying appellant's motion for a mistrial when the appellant's wife refused to testify after the state outlined her expected testimony in its opening statement; (4) denying appellant's motion for a mistrial when a deputy sheriff testified, out of the presence of the jury, that appellant's wife had been subpoenaed, had been told not to leave, but had nonetheless left the courthouse; (5) denying appellant's motion for a mistrial after the victim's wife had testified to remarks appellant's wife had made about

1. *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

threats by appellant; (6) denying appellant's motion for a mistrial after the state offered to make appellant's clothing available to appellant if he wanted to offer it in evidence because the offer was an improper comment on the burden of proof; (7) denying appellant's motion for a mistrial after the state referred to appellant as "that animal" in closing argument; (8) overruling appellant's objection to the state's closing argument that the testimony of Oliver Basham was consistent with his grand jury testimony when the grand jury testimony was not in evidence; and, (9) denying appellant's motion for a judgment of acquittal because all of the evidence was insufficient to meet the state's burden of proof.

The judgment is affirmed.

On September 11, 1975, appellant, Bobbie Joe Hodges, and the victim, Ben Cheever, spent the day drinking beer at appellant's apartment in St. Louis. Betty Hodges, appellant's wife, and Ann Cheever, the deceased's wife, had been with their husbands most of the day, but at approximately 11:30 p. m. the wives left to visit a neighbor's apartment upstairs. Before going upstairs, the two women stopped by Oliver Basham's apartment next door, and Mrs. Hodges left a phone number with Basham where she could be reached if necessary.

At approximately 2:00 a. m. Oliver Basham, who was watching television, heard kicking and knocking at his door. Basham recognized appellant Hodges' voice and told Hodges to go back home and go to bed. Hodges told Basham that he could not go home, that he had shot Ben. Basham let the appellant in. Hodges entered in a nervous state carrying a pistol which he put on a table. Hodges wanted Basham to hide it. Basham picked up the gun with a washrag and placed it in a paper sack. At this time appellant told Basham not to tell anyone what had happened while he went to look for his wife. Appellant then left Basham's apartment. Basham took the sack containing the washrag and gun to a shed behind his house and left it there.

Basham then called Betty Hodges, told her what had happened and instructed her to call the police. About fifteen minutes later, appellant returned to Basham's and lay down on Basham's bed. Shortly after 3:00 a. m., September 12, 1975, Officers William Priest and Sheldon Wight arrived at the scene, took reports from Ann Cheever and Betty Hodges, observed the body of the deceased lying on the kitchen floor of appellant's apartment, and arrested appellant in Basham's apartment.

In his first assignment of error, appellant contends the trial court erred in failing to grant his motion for a mistrial after the state in its opening statement said that appellant was arrested and given his *Miranda* rights. Appellant objected to the remark and the trial court sustained the objection, instructed the jury to disregard the statement and struck it from the record, after which appellant's motion for a mistrial was denied.

■ Appellant claims that this statement constituted improper comment upon his right to remain silent. It is true that comments concerning the failure of a defendant to testify violate the defendant's right against self-incrimination protected by the Fifth Amendment to the United States Constitution. *Griffin v. California*, 380 U.S. 609, 611, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); § 546.270, RSMo 1978; Rule 26.08.

■ When statements made by a prosecutor do not contain direct and certain references to the failure of the accused to testify, an appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant. *State v. Rothaus*, 530 S.W.2d 235, 237 (Mo. banc 1975); *State v. Pruitt*, 479 S.W.2d 785, 790 (Mo. banc 1972); *State v. Hutchinson*, 458 S.W.2d 553, 555 (Mo. banc 1970).

■ The allegedly offending statement at issue is not a "direct" and "certain" reference to appellant's failure to be a witness on his own behalf. *State v. Hutchinson, supra*. In fact, the prosecutor's statement does not even indirectly refer to the failure of appellant to testify. The remark is directed to the various actions surround-

ing the arrest of appellant with no specific mention of his unwillingness or hesitation to say anything to anyone. Although the prosecutor's remarks did not violate appellant's constitutional rights as declared in *Griffin v. California, supra,* the trial court sustained appellant's objection and instructed the jury to disregard the remark.

■■ A motion for mistrial is a request for extraordinary relief. In cases of improper incidents in the course of a trial, the necessity of the drastic remedy of a mistrial is a matter resting in the sound discretion of the trial court. Absent a manifest abuse of that discretion, the appellate court should not interfere. *Hoene v. Associated Dry Goods Corporation,* 487 S.W.2d 479, 485 (Mo.1972); *Yust v. Link,* 569 S.W.2d 236, 239 (Mo.App.1978); *State ex rel. State Highway Commission v. Drisko,* 537 S.W.2d 645, 648 (Mo.App.1976). Here there was no abuse of discretion. The cases cited by appellant to support his opposing contention are distinguishable.

Appellant next argues that the trial court erred in overruling his objection to the state's calling his wife as a witness for the state because she was unwilling to testify. This argument is without merit.

Until the Missouri Supreme Court handed down *State v. Euell,* 583 S.W.2d 173 (Mo. banc 1979) the law was that the spouse of a defendant in a criminal case, if willing to testify, was a competent witness except as to confidential communications between the spouses. This was true even though the defendant-husband objected. Section 546.-260, RSMo 1978; *State v. Damico,* 513 S.W.2d 351, 361 (Mo.1974); *State v. Frazier,* 550 S.W.2d 590, 596 (Mo.App.1977).

The issue in *Euell* was the propriety of an ex-wife's testimony against her ex-husband, a defendant in a criminal case. The court in *Euell* ruled that: "The holding or pronouncement in *State v. Frazier, supra,* that *during the marriage* a spouse may testify for the prosecution, over the objection of the defendant spouse, if the testifying spouse does so *voluntarily,* is incorrect and should no longer be followed." (Emphasis supplied at "during the marriage.") The

court further said that language in *Damico* to the effect that the common law incompetency of a wife to testify against her husband was removed by the enactment of § 546.260, RSMo 1978 seemed to be receiving an overbroad interpretation and was "likely to lead to error."

The conviction in *Euell* was nonetheless affirmed because the parties were divorced before the trial. The court held that under those circumstances the reason for the incompetency—the marital relationship—no longer existed. The facts testified to did not involve confidential communications which remain inadmissible even after a marriage is dissolved.

The change in the law does not affect the ruling here. In deciding whether to apply an overruling case prospectively or retrospectively, Missouri courts have adopted a "procedural-substantive" law test. If the overruled decision is one dealing with procedural law, the effect of the subsequent overruling decision is prospective only. *Shepherd v. Consumers Cooperative Association,* 384 S.W.2d 635 (Mo. banc 1964).

■ "This rule of privileged communications is not a rule of substantive law, but a mere rule of evidence . . . ." 97 C.J.S. Witnesses § 252, page 739. The *Euell* decision, therefore, changes procedural law only, is prospective in application, and does not affect the case at bar. *State ex rel. May Department Stores Co. v. Haid,* 327 Mo. 567, 38 S.W.2d 44, 53[10] (banc 1931); *Koebel v. Tieman Coal & Material Co.,* 337 Mo. 561, 85 S.W.2d 519, 524[3–5] (1935).

■ The test under the then applicable law was whether the spouse was "willing" to testify. It appears that there was some confusion regarding the wife's willingness to testify. The prosecutor said she told him she was willing; defense counsel said she told him she was not. The prosecutor called the wife in apparent good faith. After she was sworn, appellant objected to her being called. Although this objection was overruled, the wife did not testify. Before she spoke a word, she was advised by independent counsel of her option to refuse to

testify against her husband, after which she decided against testifying.

The cases cited by appellant, *State v. Frazier, supra,* and *State v. Damico, supra,* merely delineate the law, as it was when the opinions were published, on the competency of a spouse to testify and lend no support to his claim of error. In each case a willing ex-wife was properly permitted to testify against her ex-husband about occurrences during the marriage and the ex-husband's conviction was affirmed.

Mrs. Hodges answered no questions after she was sworn as a witness. The objection was not to any testimony but only to her taking the oath, and the objection was made after she was sworn. There was no error in overruling appellant's tardy objection.

Appellant next charges the trial court with error in denying his motion for mistrial after appellant's wife decided against testifying because the prosecutor had outlined her expected testimony in his opening remarks. This argument, based on a denial of confrontation, is also without merit.

◼ If evidence referred to is arguably admissible, and if the prosecutor acts in good faith and with reasonable grounds for supposing that he will be able to show the facts stated, it is not error to include the evidence in the opening statement. *State v. Thomas,* 526 S.W.2d 893, 896 (Mo.App. 1975); *State v. Horn,* 498 S.W.2d 771, 774 (Mo.1973). There is no evidence of bad faith by the prosecutor here; it is apparent that he believed the wife would testify.

◼ The only specific reference in the prosecutor's opening statement to expected testimony by the wife was, "Betty Hodges will tell you that she did call the police, and shortly thereafter the police arrived. . . ." This and other references to acts of the wife were easily established by other witnesses. It is difficult to see how this statement was prejudicial to appellant. The trial court did not abuse its discretion in denying appellant the drastic remedy of a mistrial. Absent a manifest abuse of that discretion, an appellate court should not inter-

fere. *Hoene v. Associated Dry Goods Corporation, supra,* 485; *Yust v. Link, supra,* 239; *State ex rel. State Highway Commission v. Drisko, supra,* 648.

◼ Appellant next contends that the trial court erred in not granting his motion for mistrial because the deputy sheriff testified, out of the presence of the jury, that appellant's wife had been advised to remain in the vicinity but had disappeared. Appellant argues that this constituted improper comment on the failure of his wife to testify. This point is ruled against appellant.

No objection was made by appellant at the time the deputy sheriff testified; hence, nothing is preserved for review. *State v. Carter,* 478 S.W.2d 358, 361 (Mo.1972); *State v. Savage,* 522 S.W.2d 144, 146 (Mo. App.1975); *State v. Grey,* 525 S.W.2d 367, 370 (Mo.App.1975).

◼ Appellant urges that the plain error rule applies. Rule 27.20(c) is applicable only when "there has been a manifest injustice or miscarriage of justice resulting from alleged error at trial." *State v. Hill,* 518 S.W.2d 682, 683 (Mo.App.1975). The plain error rule is not applicable here.

Appellant next argues that the trial court erred in failing to grant his motions for mistrial following two allegedly hearsay statements. When questioned by the state, the wife of the victim testified as follows:

Q: What did you do, not what you said, but what did you do when you got up to the neighbor's house?

A: Woke him up, and he come to the door, and we said could we come in and stay here awhile. I am afraid my husband will come home and kill me.

At this point, defense counsel objected, without grounds, and the court sustained the objection. Appellant's motion for mistrial was overruled. The second answer under scrutiny follows:

Q: Mrs. Cheever, you left the door open where you were with Betty upstairs?

A: She said he had a set of keys. I don't know, I didn't hear Bob kick the door in.

Defense counsel objected to the answer and the jury was instructed to disregard it. Again defense counsel's motion for mistrial was overruled.

 Appellant now contends that these two statements are hearsay and highly prejudicial. At trial, however, he made only general objections. Appellant cannot broaden the scope of his objection on appeal from the precise objection made at the trial. *State v. Blockton*, 526 S.W.2d 915, 920 (Mo. App.1975); *State v. Larkins*, 518 S.W.2d 131, 134 (Mo.App.1974). Nor can appellant raise only new grounds of objection on appeal. *State v. Davis*, 482 S.W.2d 486, 489 (Mo.1972); *State v. Cromwell*, 509 S.W.2d 144, 147–148 (Mo.App.1974).

 Both of these answers were unresponsive to the questions asked. Because only a general objection was made, it appears that unresponsiveness was the ground upon which the objection was sustained. No mention of hearsay was made by defense counsel or the court. Hence, appellant has preserved nothing for review. The motions for mistrial were properly denied.

Appellant next urges that the trial court erred in denying his motion for mistrial after the state told defense counsel that it would make available appellant's clothing if appellant wanted to offer it as evidence. Appellant claims this was improper comment upon the burden of proof, an implication that he had an obligation to produce evidence.

 The offer of the prosecutor was not even an indirect reference to the failure of the accused to testify. Prosecutors are permitted to comment on the failure of a defendant to produce evidence. *State v. Sechrest*, 485 S.W.2d 96, 98 (Mo.1972); *State v. Pruitt, supra*, 790. Even so, the state's offer to make appellant's clothes available to defense counsel if he wanted to offer them as evidence was only peripherally a comment on failure of the appellant to introduce evidence.

Appellant's objection was sustained; the comment was stricken from the record and the jury instructed to disregard it. There

was little likelihood that it could have created a distorted view of the state's burden of proof in the minds of the jurors. In addition, the court instructed the jury using the standard criminal instruction on burden of proof (MAI–CR 2.20).

 The trial court has broad discretion in deciding whether comments by counsel are improper and whether improper remarks are so prejudicial as to require a mistrial which should be granted only under extraordinary circumstances where the incident is so grievous that the prejudicial effect cannot be removed in any other way. *State v. Stapleton*, 518 S.W.2d 292, 301 (Mo. banc 1975); *Hoene v. Associated Dry Goods Corporation, supra*, 485. The trial court did not abuse its discretion here.

Appellant argues that the trial court erred in denying his motion for a mistrial after the state called appellant an "animal" in closing argument, alleging that the comment was highly prejudicial and instrumental in contributing to an "inflamed atmosphere against the defendant [appellant]."

 A prosecutor may not apply personal epithets to a criminal defendant or otherwise abuse him. *Cloud v. State*, 507 S.W.2d 667, 668 (Mo.App.1974). This is so even in closing argument where the prosecutor has wide latitude so long as he stays within the confines of the evidence and reasonable inferences therefrom. Argument cannot go beyond bounds so that it excites, inflames or appeals to prejudice. *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo. App.1977).

 The trial court, however, has broad discretion in deciding whether improper argument necessitates a mistrial. *State v. Morris*, 470 S.W.2d 467, 471 (Mo. 1971). Where the objection was sustained, the comment stricken from the record and the jury instructed to disregard it, the trial court may determine that these remedies have overcome the prejudicial effects. *State v. Burnett*, 429 S.W.2d 239, 246 (Mo. 1968). The trial court here decided that the prejudicial effect was cured by these measures, that a mistrial was not necessary.

Appellant cites no authority to support his claim that the prejudicial effect was not cured by the remedial measures taken.

In *State v. Wintjen*, 500 S.W.2d 39 (Mo. App.1973), a conviction for rape was affirmed even though the state referred to the defendant as "dangerous" in closing argument. The trial court, as it did here, sustained the defense objection but denied the motion for a mistrial. A similar result occurred in *State v. Burnett, supra*, where the conviction was affirmed. The trial court in *Burnett* sustained an objection to the state's calling defendant a "hoodlum," ordered the statement stricken but denied a request that the jury be discharged.

■■■ In the earlier case of *State v. Dixon*, 253 S.W. 746 (Mo.1923), a judgment of conviction of stealing was reversed and remanded for three reasons. The state in closing argument had referred to the defendant as "some dirty, low-down hound and scoundrel like the defendant." The trial court instructed the jury in writing to disregard the statement. The supreme court characterized the remark as "grossly unprofessional and prejudicial." *State v. Dixon, supra*, 748. The cause was reversed and remanded because of error in admitting evidence of other crimes, error in the trial court's treatment of prejudicial remarks in the state's opening statement, in addition to the state's prejudicial comments in closing argument. *Dixon* at first reading seems to support appellant's argument but can be distinguished because of the other error present upon which the court's decision was based. The trial court here did not abuse its discretion in overruling appellant's motion for a mistrial.

Appellant's eighth point relied on claims the trial court erred in overruling appellant's objection to the state's comment in closing argument that Oliver Basham's testimony at trial was consistent with his grand jury testimony because the grand jury testimony was not in evidence. This point is ruled against appellant.

Appellant himself used witness Basham's grand jury testimony on cross-examination in an apparent attempt to impeach him.

Thus, there was arguably an evidentiary basis for the state's reference to Basham's grand jury testimony. In cross-examination the appellant referred to at least four questions asked of Basham during his grand jury appearance. The state's comment in closing argument was allowable.

■■■ Control of arguments of counsel is within the discretion of the trial court and the judge's ruling will not be disturbed on appeal unless there is an abuse of that discretion. *State v. Frankoviglia*, 514 S.W.2d 536, 539 (Mo.1974). There was no such abuse of discretion here.

Appellant's final point charges error in denying his motion for acquittal at the close of all the evidence, alleging insufficiency of the evidence to meet the state's burden of proof. He attacks the credibility of witnesses Basham and Cheever, the results of a gunshot residue test made on appellant's hands, and the lack of evidence of a motive.

■■■ The evidence must be sufficient for the jury to determine, beyond a reasonable doubt, that the appellant shot and killed the victim. The weight of the evidence is for the jury only if this court finds there was substantial evidence of guilt. *State v. Talbert*, 524 S.W.2d 58, 59 (Mo.App. 1975). In determining the sufficiency of the evidence, the facts in evidence and all favorable inferences reasonably to be drawn from the facts must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be ignored. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976).

The evidence adduced was sufficient as to every major element of the offense. Some of the facts in evidence are:

1. The victim had been drinking most of the day with appellant at appellant's residence.

2. The wives of the victim and appellant spent all day with them but left at 11:30 p. m.

3. At approximately 2:00 a. m., appellant, visibly shaken, arrived at Basham's apartment and told Basham he

had shot "old Ben [Cheever]." He gave Basham a gun which contained one expended and four live .32 caliber cartridges.

4. The victim was found by police some time after 3:00 a. m. lying dead on the floor of appellant's kitchen.

5. The wound showed powder burns. The gun had been fired close to the victim's head and the bullet caused his death.

6. There was no sign of a struggle in appellant's apartment.

7. A ballistics test showed the fatal bullet had been fired from appellant's revolver.

8. A gunshot residue test administered one to one-and-a-half hours after appellant's arrest showed appellant had recently handled a firearm.

There was sufficient evidence to submit the case to the jury. The credibility of the witnesses and the weight to be given to their testimony was for the jury to decide under the instructions of the court (MAI–CR 2.01).

Appellant argues that proof of motive is important in a case based on circumstantial evidence when the defendant denies committing the crime. *State v. Kirksey,* 547 S.W.2d 149, 151 (Mo.App.1977). But it is not an essential element of murder. *State v. Stapleton, supra,* 296. Appellant here did not take the stand and deny the crime, but relied on his claim that the state failed to meet its burden of proof.

The evidence outlined above diminished the importance of proof of motive. Appellant and the victim had been drinking together for more than twelve hours. The victim was shot and killed in appellant's apartment, the scene of the drinking bout. Appellant came to Basham's apartment in a "nervous and shaking" condition and told Basham he had shot Ben. Appellant gave Basham the gun containing an expended cartridge, a gun which was later shown to be the murder weapon. All of this plus the other evidence obviated the need for any further proof of motive.

The judgment is affirmed.

WEIER, C. J., and SMITH, J., concur.