**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**James Marshall WILLIS,**
**Defendant-Appellant.**

**No. 43172.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 30, 1982.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Richard A. Barry, Asst. Pros. Atty., Clayton, for defendant-appellant.

Dennis N. Smith, Clayton, for plaintiff-respondent.

STEWART, Presiding Judge.

Defendant was convicted of assault in the first degree. § 565.050 RSMo 1978. The court entered judgment upon the jury verdict and sentenced defendant to twenty-five years imprisonment.

Defendant urges four reasons for reversal. We are required to reverse because of error in the admission of evidence. We shall discuss that issue first.

Defendant does not challenge the sufficiency of the evidence, therefore we need give only a brief statement of the facts as viewed in the light most favorable to the State.

Onzell Williams, the victim of the assault, and Michael Grady had been acquainted for a number of years. On May 10, 1979, Grady called Williams at the home of Williams' girl friend, Kim Ford. Grady asked Williams to meet him at the home of Caroline Bailey Hinton on Partridge Avenue near Canton Street in University City. Williams knew Caroline Hinton but not intimately.

Some time before this evening, Grady had accused Williams of having burglarized his sister Sharon's apartment. Grady and defendant had gone to Kim Ford's apartment and picked up Williams and Ms. Ford. Williams was seated in the back seat of the car with defendant who held a gun on him. They headed for St. Charles and then turned around. Grady exchanged words with Williams over the burglary. Williams denied any knowledge of a burglary. Grady stopped the car and ordered Williams out and threatened to beat him. After getting out of the car, Williams ran away.

Grady and Williams had apparently settled this difference before May 10. At least Williams thought that they were on friendly terms again and Williams agreed to meet Grady.

Williams, with Kim Ford in the car, drove to Partridge Avenue and parked in the vicinity of Caroline Hinton's home shortly after 8:00 P.M. Williams and Ms. Ford remained in the car. Within five to ten minutes after they had parked, Grady walked up from the rear to the driver's side of the car. As he greeted Williams, he looked about the area in a suspicious manner. Williams then looked to his right and saw the defendant, whom he had known through seeing defendant in the neighborhood when they were growing up. Defendant was at the passenger window with a gun in his hand. Williams had to struggle to get out the left front door of the car as Grady was trying to hold the door shut. Williams managed to get out the door and ran in the direction of the rear of the car with defendant and Grady chasing him. As they ran, Williams heard Grady say "[l]et him have it." Defendant then fired the gun striking Williams in the back. A second shot hit Williams in the face. Mr. Williams suffered serious permanent injuries.

Defendant, in his own defense, testified that he was not at the scene of the crime with Grady and that he did not shoot the

victim. The facts relating to the issues to be discussed will be set out as we discuss the issue.

Defendant contends that the trial court erred in permitting the State to introduce into evidence testimony and exhibits tending to prove that a life insurance policy was issued in the name of Onzell Williams, naming Caroline Hinton as the beneficiary, upon a forged application for the policy. It is charged that this evidence was not indicative of defendant's guilt or innocence, was irrelevant and not material to any issue before the court and tended to divert the attention of the jury away from the main issues in the case.

The State would justify this evidence as relevant to the establishment of a motive for defendant's attempt to kill Williams.

Angela Grady Franks, the sister of Michael Grady, was employed by John Hancock Insurance Company as a sales agent. She presented an application for life insurance to the insurance company that purported to be signed by Onzell Williams. Based upon the application, the company issued a policy on the life of Williams in the sum of $5,000.00 on October 20, 1975. "Susan Williams, wife" was named the beneficiary. The beneficiary was subsequently changed to Caroline Hinton. The policy lapsed for non-payment of premiums in July of 1978 and was reinstated later that same month. The reinstatement form was purportedly signed by Onzell Williams. Angela Grady Franks signed the form as agent for the company. In September, 1978, an application increasing the amount of the policy to $20,000 bore a signature purporting to be that of Williams. Mrs. Franks signed as the company agent. The policy was increased based upon the application. Mr. Williams had not signed any of these documents and paid no premiums on the policy of insurance. All premiums were paid in cash.

Mr. Williams did not make an application for the policy, for reinstatement or for the increase in coverage and was unaware of its existence. There was evidence from an expert in questioned documents that would warrant a finding that Williams' signatures on the applications were forged. This expert could not say whether the forged signatures had been made by Angela Franks.

At weekly sales meetings of the district agents of John Hancock Insurance Company, the district manager advises the agents of the names of policy holders whose policies may lapse for non-payment of premium. At the meeting on May 10, 1979, the manager advised the agents that Onzell Williams' policy would lapse for non-payment of premiums if two months' premiums were not paid within the next seven days. It was on the evening of May 10, 1979, that Williams was shot. Premiums were paid on May 17 and the policy was kept in force through the year 1979.

■ Motive is said to be the moving course, the impulse, the desire that induces criminal action on the part of the accused. It is distinguished from intent which is the purpose or design with which the act is done; the purpose to make the means adopted effective. *State v. Hyde*, 234 Mo. 200, 136 S.W. 316, 322 (1911); *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256, 260 (1939).

■ It is generally stated that wide latitude is permitted in the development of motive. *State v. Brown*, 360 Mo. 104, 227 S.W.2d 646 (1950). The evidence must, however, meet the general rules of admissibility and tend to display the motive of the person on trial to commit the crime charged. See *State v. Hyde, supra*, 136 S.W. at 326.

■ The underlying basis for the admission of evidence of a life insurance policy on the deceased is to show that the accused would obtain a financial gain by reason of the death of the deceased. It is generally held that before the existence of an insurance policy meets the test of relevancy it must be shown that the defendant was aware of the existence of the insurance policy and that it was in force or that he believed it was in force and that he could stand to gain financially by the death of the policy holder. *People v. Gougas*, 410 Ill.

235, 102 N.E.2d 152 (1951); *People v. Coleman*, 49 Ill.2d 565, 276 N.E.2d 721, 724 (1971). See also *State v. Felker*, 27 Mont. 451, 71 P. 668 (1903) and *People v. Goedecke*, 65 Cal.2d 850, 56 Cal.Rptr. 625, 423 P.2d 777 (banc 1967). It has been held that knowledge of the existence of the policy may be proven by circumstantial evidence. *People v. Goedecke, supra.*

The issue as to whether defendant must have knowledge of the existence of the policy of insurance upon deceased and that he stood to benefit by the death of the victim has not been specifically ruled in this State.[1]

██ The record is devoid of any evidence that defendant was aware of the existence of the insurance policy. The only evidence connecting defendant with the named beneficiary who would presumptively gain by reason of the death of Williams was that she was an acquaintance. Although the victim was to meet Grady and defendant at Caroline Hinton's, they did not go to the house but met nearby. There is no evidence that Ms. Hinton was involved in the scheme to kill Williams. We could infer that Angela Franks had been responsible for having the policy issued and for increasing the value and changing the beneficiary; that upon the death of the insured, she, as the insurance agent, could have obtained the check payable to the beneficiary for delivery to the beneficiary in accordance with company policy; she could then have arranged to have the endorsement on the check forged and thus benefit from the death of Williams. The only evidence of any relationship between Angela and defendant came from defendant on cross-examination. As we read the testimony, defendant met Angela on one occasion.[2] There is also no evidence that Michael Grady knew of the existence of the insurance policy. We might infer from the relationship with Angela that he knew of the policy if it was shown that he had a close relationship with his sister Angela. There is, however, no evidence that Grady or anyone else informed defendant of the existence of the policy and no evidence that defendant expected to gain financially by reason of the policy of insurance on Williams' life.

On the present record there is an insufficient foundation for the admission of the policy of insurance and the testimony respecting this policy. For this reason we must reverse and remand.

Defendant also attacks Instruction No. 6, the verdict directing instruction. This instruction is a modification of MAI–CR 2.12. The modification is essentially the same modification as that attacked in *State v. McIlvoy*, 629 S.W.2d 330 (Mo. banc 1982). The issue was ruled adversely to defendant's position. Another contention as to this instruction will undoubtedly be correct-

---

1. In *State v. Mansker*, 339 Mo. 913, 98 S.W.2d 666 (1936), the facts are similar to the case at bar. There was apparently no objection raised as to evidence of a policy of insurance on the life of the deceased. Defendant objected only to evidence of deceased's poverty tending to show that the insurance proceeds and not robbery was the motive for the killing.

In *State v. Hancock*, 340 Mo. 918, 104 S.W.2d 241 (1937), evidence was admissible where defendant knew of the policy on the life of his wife and tried to have himself made beneficiary or partial beneficiary with his daughter and after wife's death tried to obtain control of the proceeds of the policy.

*State v. Condit*, 307 Mo. 393, 270 S.W.2d 286 (1925) held it was error to exclude defendant's evidence that would tend to prove that the defendant was not motivated to kill her husband for the proceeds of an insurance policy.

*State v. Elgin*, 391 S.W.2d 341 (Mo.1965) held that it was error to permit secondary evidence of a policy of life insurance on deceased where defendant was beneficiary because there was no foundation for admission of secondary evidence.

2. "Q. Did Michael Grady ever talk to you about Kim Ford, then?

A. From the point of, well, she's like, say, those jeans and things, she would sell it to him cheaper than she would a lot of other people.

Q. You knew who she was; is that true?

A. From that one occasion, yes.

Q. You never saw her or knew of her otherwise?

A. No.

Q. Do you know Angela Franks, Angela Grady Franks?

A. I know of her, yes.

Q. How long have you known her?

A. Maybe the same amount of time."

ed on retrial and we need not rule on the prejudicial effect of the omission of the definition of "serious personal injury."

Other issues raised by defendant are not likely to arise on retrial. The assistant prosecuting attorney will be guided by the case law with respect to personalizing argument to the jury and attempting to define "reasonable doubt."

For error in the admission of evidence respecting the policy of life insurance, the case is reversed and remanded for a new trial.

STEPHAN and CRANDALL, JJ., concur.