**STATE of Missouri, Plaintiff-Respondent,**

v.

**James TAYLOR, Defendant-Appellant.** .

**No. 49922.**

Missouri Court of Appeals, Eastern District, Division Three.

June 24, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1986.

Application to Transfer Denied Sept. 16, 1986.

William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Shaw, Howlett & Schwartz, C. Clifford Schwartz, Clayton, for defendant-appellant.

SIMON, Judge.

Defendant, James Taylor, was found guilty of possession of gambling records in the first degree in violation of § 572.050 RSMo 1978, a class D felony. (All further references shall be to RSMo 1978 unless otherwise noted.) Following a jury verdict in the Circuit Court of Cape Girardeau County, the defendant was sentenced to a nine month term in the county jail and fined five thousand dollars.

On appeal, the defendant contends the trial court erred in: (1) overruling his motions for a judgment of acquittal at the close of all the evidence, and for a judgment notwithstanding the verdict, as the state only established constructive possession, not "criminal possession;" (2) denying his motion to suppress a red spiral notebook seized during an inventory search, because the search was but a subterfuge to gain warrantless entry into his automobile, and in the alternative, because the search of the contents of the notebook was unconstitutional as it went beyond the scope of the inventory search; (3) denying his motion for acquittal at the close of all the evidence since § 572.050 is unconstitutionally void for vagueness; (4) denying his motion to voir dire the venire members regarding data on their information sheets and the presumption of innocence, probable cause, and burden of proof. We affirm.

Defendant was arrested by Federal Drug Enforcement Administration (DEA) Agent Coleman in Cape Girardeau after a drug transaction meeting involving the defendant. Since his car was used to transport cash for the drug sale, it was seized pursuant to federal forfeiture regulations. During Agent Coleman's forfeiture inventory of defendant's car, a red spiral notebook containing gambling records was seized. We shall present additional facts necessary for the resolution of the issues in our discussion of defendant's points on appeal.

As to defendant's first point, a person commits a class D felony under § 572.050 if he, with knowledge of its contents, possesses a kind of gambling record defined by the statute.

Section 572.050 provides:

*Possession of gambling records in the first degree*

1. A person commits the crime of possession of gambling records in the first degree if, with knowledge of the contents thereof, he possesses gambling record of a kind used:

(1) In the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting or representing more than five bets totaling more than five hundred dollars; or

(2) In the operation, promotion or playing of a lottery or policy scheme or enterprise, and constituting, reflecting or representing more than five hundred plays or chances therein.

2. A person does not commit a crime under subdivision (1) of subsection 1 of this section of the gambling record possessed by the defendant constituted, reflected or represented bets of the defendant himself in a number not exceeding ten.

3. The defendant shall have the burden of injecting the issue under subsection 2.

4. Possession of gambling records in the first degree is a class D felony.

The legislature, in enacting § 572.050, did not specifically define possession, nor did it define the level of culpability of the act of possession. Our task here is to determine the legislature's intended definition of possession.

We approach this task aided by a basic presumption. The legislature is presumed to have used words in a statute in the light of, and as defined and construed in prior cases by our Supreme Court. *City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 8 (Mo. 1958).

When the legislature passed § 572.050 in 1977, it had before it our Supreme Court's construction of the term "possession" as the term appeared in § 195.020 RSMo 1965 Supp., a narcotic drug act (hereinafter § 195.020 (1965)). *See State v. Young,* 427 S.W.2d 510, 513 (Mo.1968). In substance, the two statutes are similar. Both make the possession of specified items a criminal act; neither defined possession. The *Young* court, construing the meaning of the term possession as used in § 195.020 (1965), held that possession could be actual or constructive which could be proved by circumstantial evidence, and further found that the mens rea of the act of possession was conscious and intentional. *Young,* 427 S.W.2d at 513. Therefore, the legislature is presumed to have used "possession" in § 572.050 in the light of, and as defined in *Young* at 513. Thus, possession, under § 572.050 may be either actual or constructive, but it must be both conscious and intentional.

The record indicates that defendant did not have actual possession of the red spiral notebook when he was arrested. Therefore, we address the issue as to whether the defendant constructively possessed it. Constructive possession exists where one does not have physical custody but the right to immediate possession. *Jackson v. Rothschild,* 99 S.W.2d 859 (Mo.App.1936).

The defendant was arrested after leaving the Candlewick Lounge as he was approaching a yellow Cadillac, which he had been driving shortly before. The red spiral notebook was found in this yellow Cadillac, which was registered in the defendant's name. Thus, he had a right to immediately possess the yellow Cadillac and all items within it. These facts form a sufficient foundation for the jury's determination that the defendant constructively possessed the red spiral notebook.

Next, we examine whether the state provided sufficient evidence for the jury to decide the defendant consciously and intentionally possessed the said notebook. At trial, Donald Howell testified on direct examination by the state that on the day the defendant was arrested, he met the defendant at Poppa D's Restaurant. He left Poppa D's with the defendant. The two got into defendant's yellow Cadillac and drove to the Candlewick Lounge. While in the lounge, Howell saw the defendant leave and return with a notebook, the same size as the one seized from the defendant's car. Howell saw defendant open the notebook and place a phone call.

Officer Castell testified that two days after the defendant was arrested, and after Agent Coleman had told him that the automobile was not going to be forfeited by the DEA, he phoned the defendant. Castell told the defendant that the car was going to be released. The defendant said he would not be picking up the car. Castell then said that he would call back shortly and find out who would be. Castell called back and was told Audrey Worley would receive the car. She came to the police station that day and took possession of the car. One or two days later, the defendant came to the police station and spoke with Castell. Castell testified, "He said that when he got his car back, that he found that there was a red spiral notebook missing out of it that he had left in there and wanted to know where the notebook was." Audrey Worley was not informed when she received defendant's car that the notebook had been seized. Only Agent Coleman, Officer Castell and the Prosecuting Attorney's Office knew it had been seized.

The mental elements of an act of an offense, are generally not susceptible of direct proof, and may be established by circumstantial evidence or inferred from surrounding facts. *State v. Moon,* 602 S.W.2d 828, 831 (Mo.App.1980). An inference as to defendant's culpable state of mind of conscious and intentional possession of the red spiral notebook is strongly supported by the following facts:

1. Donald Howell observed the defendant leave the Candlewick Lounge (to which they together traveled in defendant's yellow Cadillac) and return with a notebook. Howell saw defendant open the notebook and use the phone. Howell

testified that the notebook he observed was the same size as the red spiral notebook seized from defendant's yellow Cadillac;

2. Defendant's statement to Officer Castell regarding a red spiral notebook missing from his car that he had left there and his inquiry as to where the notebook was;

3. The yellow Cadillac was owned by the defendant and driven by him just prior to his arrest.

Under the standard of review employed in *State v. Thurber*, 625 S.W.2d 931, 933 (Mo.App.1981), we view these facts and all reasonable inferences which can be drawn from them in a light most favorable to the state, against whom the motion for acquittal was made. We conclude that the state produced evidence sufficient for a jury to find beyond a reasonable doubt that the defendant, when arrested, constructively, consciously and intentionally possessed the red spiral notebook. The defendant's motion for judgment of acquittal after all the evidence, Rule 27.07(a), was properly denied.

The defendant contends the trial court erred in not granting his motion for a judgment notwithstanding the verdict (JNOV), Rule 72.01. In a criminal trial the proper motion is not a JNOV, but a motion for judgment of acquittal after the jury's verdict or discharge. Rule 27.07(c). We will treat defendant's motion for a JNOV as a motion for judgment of acquittal.

Considering the same evidence we examined in addressing defendant's argument that the trial court erred in denying his motion under Rule 27.07(a), and considering it in a light most favorable to the verdict, and leaving all issues of credibility and weight to the jury, we conclude the trial court did not err in denying defendant's motion under Rule 27.07(c). *State v. Gamache*, 519 S.W.2d 34, 39 (Mo.App. 1975).

Defendant's second point on appeal concerns the seizure of the red spiral notebook from his car. The defendant argues the trial court erred in not suppressing the notebook because it was seized during an inventory search which was but a subterfuge to gain warrantless entry into defendant's car. He also argues that even if the search was valid, its scope did not encompass leafing through the notebook.

Agent Coleman arrested defendant on May 11, 1984 for violating federal drug laws. Since defendant's car was used in the commission of the offense, it was subject to federal forfeiture proceedings pursuant to DEA regulations. As the DEA is without a site in Cape Girardeau for storage of seized cars, defendant's car was stored with the Cape Girardeau Police. When the Cape Girardeau Police took possession of the car, an inventory search was made. Among the items listed as being in the car was a red spiral notebook. It was opened by Patrolman Zab William who conducted the inventory search. He testified that he opened it because money could have been located in it. He recognized the records within the notebook as gambling records. He replaced the notebook where he found it.

On May 14, 1984 Agent Coleman took custody of defendant's car. He did so pursuant to federal forfeiture regulations and procedures. He was unaware that the Cape Girardeau Police had conducted an inventory search.

If the car's value exceeded $2,500, it was subject to forfeiture. If forfeited, all personal property located within the car had to be returned to the car's owner. The federal procedure requires an inventory of all items located within the car. If the car's value is less than $2,500, it is returned to its owner along with all items within. Whether the car's value is determined first, followed by an inventory, or vice versa is not prescribed by DEA regulations. An agent may follow either procedure.

Agent Coleman normally valuated a car first, since if it was worth less than $2,500, an inventory would not be necessary. Since defendant's car was a Cadillac, Coleman felt it may be worth more than $2,500. He entered the car, both to determine its

mileage and condition and to begin the inventory procedure. Before entering the car he opened the trunk in which he found two very heavy fans. While in the car, he started to inventory the items within the car and gather the information he knew a Cadillac dealer would need in order to give him an estimated value over the phone, Agent Coleman noticed a red spiral notebook lying on the back seat in plain view. Coleman said he opened it to determine its owner, and he also testified that "in my experience there is usually a ledger or some kind of drug ledger in drug distribution." After a cursory examination, Coleman recognized the type of records in the notebook as gambling records.

Considering the high mileage of the car, its condition, the task he would have in removing the fans from the trunk as well as the plethora of things in the car, each of which would have to be inventoried, Coleman decided to stop the inventory and call a Cadillac dealer. If the car was worth less than $2,500, his job was over. As he left the car, he seized the red spiral notebook. He placed a call to a local Cadillac dealer and was told the car had a maximum value of $2,000. He then returned the car and notebook to the Cape Girardeau police.

■ The defendant concedes the initial inventory search by the Cape Girardeau Police was valid under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The second search, he contends, was not. Defendant argues that since the reasons for entering the car during the first search were exhausted, the second search was a fishing expedition for evidence.

We do not see the second search as a redundancy, explainable only as a pretext search. Agent Coleman was unaware of the first search. But even if he were, the reason he entered the car was entirely different from the reason the Cape Girardeau Police entered. Agent Coleman's entry was based upon federal forfeiture regulations regarding cars used as instrumentalities of crime. Even had Coleman known of the first inventory search, he could not

have adopted it. The federal forfeiture form required Coleman to make his own inventory and value determination. We do not find the second entry and inventory a mere pretext to search for incriminating evidence.

■ Another matter is Agent Coleman's entry into the red spiral notebook. The scope of Coleman's entry was limited by its twin purposes. First, the car's value needed to be determined. Second, a list of the items within the car needed to be made. Leafing through the contents of the red spiral notebook to ascertain its owner was outside the scope of Agent Coleman's limited entry. To whom the notebook belonged had no bearing upon either the value of the car or what items needed to be inventoried and returned to the car's owner. Who owned the notebook was irrelevant to Agent Coleman's task, since he had to return it to the car's owner, regardless who actually owned the notebook.

However, Agent Coleman's testimony suggests another reason a DEA agent might examine a notebook in a car involved in a drug transaction, "[I]n my experience there is usually a ledger or some kind of ledger or some kind of drug ledger involved in drug distribution." He testified that he had no reason to believe that a notebook containing drug records, or drug records of any kind would be in the car. The notebook was in plain view, discovered inadvertently and Agent Coleman, drawing upon experience, knew that drug records were often found in connection with drug distribution schemes.

■ We find that Agent Coleman's warrantless search was justified under the plain view exception. Under this doctrine, a law enforcement official may enter, without a warrant, areas protected by the Fourth Amendment, provided three conditions are met. First, the law enforcement official's initial intrusion must have been lawful or he must otherwise be in a position from which he can view a particular area. Second, the official must discover the incriminating evidence inadvertently,

namely he may not know of the evidence in advance and rely on the plain view doctrine as a pretext. Third, the official must have probable cause to believe the property they are viewing is or contains evidence of criminality. *Texas v. Brown*, 460 U.S. 730, 736, 737, 742, 743, 103 S.Ct. 1535, 1540, 1543, 75 L.Ed.2d 502, 510, 513, 514 (1983); *State v. Abbott*, 664 S.W.2d 537, 542 (Mo.App.1983).

Agent Coleman was lawful in the car. He inadvertently came across the notebook. He had probable cause to believe that the contents of the notebook could contain drug records. His warrantless entry was within the plain view exception. The trial court properly admitted into evidence the red spiral notebook found in defendant's car.

■ In his third point on appeal, the defendant contends § 572.050 is unconstitutional because it is too vague, as it failed to provide defendant with requisite notice and fair warning of the proscribed conduct.

The defendant contends that since "bookmaking scheme" and "policy scheme or enterprise" are without concise definition, it is impossible to determine what type of records are proscribed by the statute.

In determining the constitutionality of a statute attacked on the grounds of vagueness the test is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and meaning. *State v. Hampton*, 653 S.W.2d 191, 194 (Mo. banc 1983).

We first note that "bookmaking scheme" records fall with the statute if they reflect more than five bets totaling more than five hundred dollars ($500.00), with the proviso that if the record contains less than ten bets of the defendant himself, no crime under § 572.050 is committed. We also note that "policy scheme or enterprise" records fall within the statute if they reflect more than five hundred (500) plays or chances. The dollar and numerical figures provide clear guidelines regarding the quantitative aspects of the proscribed conduct. "Bookmaking scheme" and "policy scheme or enterprise" are defined in § 572.010 Chapter Definitions. Bookmaking "means advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcome of future contingent events." Section 572.010(2). Lottery and policy are synonymous terms under § 572.010(7) and defined as "an unlawful gambling scheme in which for a consideration the participants are given an opportunity to win something of value, the award of which is determined by chance."

We conclude that § 572.050 when read together with § 572.010, Chapter Definitions, constitutes a sufficient warning as to what type of bookmaking records or lottery or policy records are illegal to possess. We find no merit to defendant's third point.

In defendant's fourth point, he contends the trial court erred in effectively denying defendant the opportunity at voir dire to question the venire members regarding: (1) information on their information sheets; (2) presumption of innocence, probable cause and burden of proof. The standard of review of a trial court's voir dire rulings has been established by our Supreme Court in *State v. Smith*, 649 S.W.2d 417, 428 (Mo. banc 1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246.

The purpose of voir dire is to enable each party to participate in selection of a fair and impartial jury and to that end, wide latitude is allowed in examination of the panel. *State v. Lumsden*, 589 S.W.2d 226, 229 (Mo. banc 1979). During voir dire the defendant should be permitted to develop not only facts which might manifest bias and form the basis of a challenge for cause, but also such facts as might be useful to him in detecting the possibility of bias and intelligently utilizing his peremptory challenges. *State v. Brown*, 547 S.W.2d 797, 799 (Mo. banc 1977); *State v. Thompson*, 541 S.W.2d 16, 17 (Mo.App.1976). Nevertheless, the examination of jurors as to their qualifications is conducted under the supervision of the trial court and the na-

ture and extent of the questions counsel may ask are discretionary with that court. *State v. Lumsden,* 589 S.W.2d 226, 229 (Mo. banc 1979). Rulings of the trial court during voir dire will be disturbed on appeal only when the record shows an abuse of discretion, *State v. Lumsden,* 589 S.W.2d at 229, and a real probability of injury to the complaining party. *State v. Olinghouse,* 605 S.W.2d 58, 68 (Mo. banc 1980).

■ The trial court required the state and the defendant to direct their questions to the veniremen collectively. If a venireman answered affirmatively, he was to raise his hand. At that point an individual examination could be conducted by asking follow-up questions. Such a procedure did not so encumber defendant's capacity to ferret out impartiality among the veniremen that the adoption of it was an abuse of the trial court's discretion.

■ Defendant also contends the trial court erred in refusing to permit him to question the veniremen on the issues of burden of proof, reasonable doubt and presumption of innocence. Our Supreme Court has ordered trial courts to instruct the jury on these issues during voir dire. MAI–CR 2d 1.02; 2.20 (1984). Note 3 to MAI–CR 2d 2.20 states, "No other instruction may be given elaborating further upon or attempting to define presumption of innocence, reasonable doubt or proof beyond a reasonable doubt." This note applies to counsel as well as to the trial court. *State v. Van,* 543 S.W.2d 827, 830 (Mo.App.1976).

The court directed the defendant not to go into the subject matters covered by Instructions 1.02 and 2.20. The defendant was not foreclosed from asking the veniremen if they understood those instructions, or would or could follow them. In fact, defendant was permitted to ask a question regarding reasonable doubt. "Could you find the defendant not guilty if this Prosecutor doesn't prove every element of this offense beyond a reasonable doubt?" The arena into which the defendant repeatedly attempted to venture and which the trial court forbade his entry was the domain of

the trial court. Defendant's questions carried within them comment upon issues dealt with in Instructions 1.02 and 2.20. During voir dire, one may inquire as to whether the veniremen understand the issues covered in the instruction, and whether they can and will follow the instructions. In doing so, however, the examiner may not by indirection interject a lesson or comment upon issues covered in Instructions 1.02 and 2.20. From our review of the record, we hold the trial court did not abuse its discretion in limiting defendant's voir dire on the issues of burden of proof, probable cause and presumption of innocence.

The judgment of the trial court is affirmed.

KAROHL, P.J., and GAERTNER, J., concur.