**STATE of Missouri, Respondent,**

v.

**John ALEXANDER, Appellant.**

**No. WD 38298.**

Missouri Court of Appeals,
Western District.

March 10, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 1987.

Application to Transfer Denied
June 16, 1987.

Robert Wolfrum, Asst. Public Defender, St. Charles, for appellant.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and SHANGLER and GAITAN, JJ.

TURNAGE, Presiding Judge.

John Alexander appeals from his conviction of first-degree murder, § 565.020, RSMo 1984 Cum.Supp., for the 1984 killing of Terry Ince. Alexander argues that the court erred in failing to suppress evidence and in admitting various statements into evidence.

Affirmed.

On December 6, 1984 John Alexander and his wife Glenda had been separated for some time. Alexander had been living with another woman, and a petition to dissolve the Alexanders' marriage was pending. Early that morning, Alexander went to the house where Glenda was living, entered her bedroom and shot Glenda and Terry Ince as they lay in bed. One bullet passed through Glenda's abdomen and three bullets entered Ince's back.

At 5:50 on the morning of December 6, 1984 Officer Charles Boyd was dispatched to Glenda's house, at 704 Maryland, Louisiana, Missouri. Officer Boyd entered the house and found Glenda and Ince lying on a bed. Glenda was curled into a fetal position and was obviously suffering a great deal of pain. Ince was dead. In response to Boyd's inquiry, Glenda stated, "John done it."

At approximately seven o'clock that morning, Sheriff David Jenkins went to Alexander's house. Jenkins knocked on the door, which came slightly ajar. Through the opening Jenkins saw Alexander slumped in a chair. Jenkins and his colleagues ran in and apprehended Alexander, also seizing a handgun wedged under Alexander's leg.

Scientific testimony showed that Ince died as a result of one of the three gunshot wounds inflicted on him. Analysis of the remnants of the bullets found in Ince's body and in Glenda's house showed the bullets were fired from the gun seized from Alexander.

J. Rockne Calhoun, attorney for Glenda Alexander, testified that he had obtained a court order prohibiting Alexander from entering Glenda's residence at 704 Maryland and that he had filed a certificate of readiness for trial in the Alexanders' dissolution case.

■ Alexander argues that the trial court erred in refusing to suppress the introduction of his gun, which police seized as they arrested him. Alexander argues that the police violated the rule in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), by entering his home without a warrant. Alexander's argument fails, since there were clearly exigent circumstances justifying the warrantless arrest and the gun was in plain view as police arrested Alexander.

*Payton v. New York* acknowledges that police may enter private homes without a warrant when exigent circumstances compel them to do so. 445 U.S. at 590, 100 S.Ct. at 1382. Though *Payton* does not detail what circumstances are "exigent," case law before and after *Payton* shows the circumstances in this case easily qualify. *Dorman v. United States*, 435 F.2d 385, 392–93[11] (D.C.Cir. banc 1970) (described as "a leading case defining exigent circumstances" by the Court in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984)), catalogs factors tending to establish that circumstances are "exigent," so as to justify warrantless entry of a home:

1. the offense involved is grave;
2. police reasonably believe the suspect to be armed;
3. police have more than minimal probable cause to believe the suspect committed the crime;
4. police have strong reason to believe the suspect is in the premises in question;
5. there is a likelihood of escape if prompt action is not taken; and
6. the entry is made peaceably.

*See generally*, 2 W. LaFave, Search and Seizure (2d ed. 1987) § 6.1(f) (*Dorman* widely followed).

In this case all the *Dorman* factors indicate warrantless entry was proper. The offense involved was murder, committed with a gun. There was every reason to believe the perpetrator still had the gun. The police had an eyewitness statement that Alexander was the murderer. Alexander's car was outside his house, and there were fresh tracks in the snow in his yard. Police were able to see Alexander inside the house before they entered. The Sheriff had been informed by officers who had been at the scene of the crime with Alexander's wife and children that Alexander might flee to Oklahoma. Finally, the entry was made peaceably, as Alexander was dozing when the police apprehended him. Under all these circumstances, the police were justified in proceeding to apprehend Alexander without waiting to obtain a warrant.

■ Obviously, once the police were legitimately within Alexander's house, the gun wedged under his leg was within "plain view." *See State v. Taylor*, 714 S.W.2d 767, 772–73 (Mo.App.1986). The police found the gun inadvertently while arresting Alexander; though, of course, they had reason to believe he was armed, there is no evidence that they used the arrest as a pretext to get to the gun. Moreover, under the circumstances the link between the gun and the crime was patent. Thus, the police were entitled to seize the gun under the "plain view" doctrine. *See id.*

Alexander argues that the court erred in admitting Officer Boyd's testimony that

Glenda Alexander told Boyd, "John done it." Alexander argues that § 546.260, RSMo 1978 (amended by L.1985, H.B. Nos. 366, 248, 372 and 393, effective July 19, 1985), should apply and that former § 546.-260 would prohibit use of his wife's utterances against him.[1]

Former § 546.260 allowed the criminal defendant to decide whether or not his spouse's testimony would be competent at his trial. After the crime herein, but before the trial, § 546.260 was amended to provide that the witness spouse, rather than the defendant spouse, was entitled to choose whether the witness spouse would testify against the defendant spouse.

Alexander argues that former § 546.260 should apply, because it was in effect at the time of the crime and Glenda's statement, and that therefore Alexander was entitled to choose against admission of Glenda's utterances in his trial.

■ Leaving aside the question of whether § 546.260, RSMo 1978, applied to preclude third persons' reportage of a spouse's out of court utterance, *see generally* 8 J. Wigmore, Evidence (McNaughton rev.1961 and 1986 Supplement) § 2232, this court holds that § 546.260, RSMo 1985 Non Cum.Supp., was the applicable statute and that it did not prohibit introduction of Glenda's statement to a third person.

The rules under former § 546.260 regarding which spouse was entitled to decide whether the non-defendant spouse could testify were procedural, rather than substantive rules. *State v. Shafer*, 609 S.W.2d 153, 157[2,3] (Mo. banc 1980). Therefore, the statute in effect at the time of the trial, rather than at the time of the crime, was applicable. *Danaher v. Smith*, 666 S.W.2d 452, 456[3,4] (Mo.App.1984).[2]

■ Because the applicable statute gave Glenda the right to testify or not as she saw fit, she was able to waive her right to silence. Since the statute allowed Glenda to speak out against her husband in court, there would seem to be nothing in the statute precluding admission of a report of her speaking out against him out of court. She voluntarily spoke to Officer Boyd, and there is no reason to construe § 546.260 so as to allow Glenda to take back words already spoken.

■ Alexander also argues that Boyd's report of Glenda's statement was inadmissible hearsay. To the contrary, Glenda's statement was admissible as an excited utterance, since the evidence showed she had recently been shot and was in such great

---

**1.** Section 546.260, RSMo 1978, provided:

No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant testify in his behalf, or on behalf of a codefendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section for a defendant, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife.

§ 546.260.1, RSMo 1985 Non Cum.Supp. (same as § 546.260.1, RSMo 1986), provides:

1. No person shall be incompetent to testify as a witness in any criminal cause or prosecu-

tion by reason of being the person on trial or examination, or by reason of being the husband or wife of the accused, but any such facts may be shown for the purpose of affecting the credibility of such witness; provided, that no person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may testify at his or her option either on behalf of or against the defendant, and shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case; provided, that in no case shall husband or wife, when testifying under the provisions of this section, be permitted to disclose confidential communications had or made between them in the relation of such husband and wife.

**2.** Though *State v. Hodges,* 586 S.W.2d 420, 425[6] (Mo.App.1979), refers to the question as one of privilege, in this case there was no privileged husband-to-wife communication in issue. Rather, the question is one of what class of person is competent to testify, and therefore the statute deciding that question vested no substantive rights. *See Danaher,* 666 S.W.2d at 456.

pain at the time of the utterance that she asked Officer Boyd to kill her to end her suffering. The evidence clearly indicates that Glenda has been subjected to a startling event, that her statement pertained to that event, and she had remained under the stress of the event up to the time of the utterance. *See State v. Scott,* 716 S.W.2d 413, 415[4] (Mo.App.1986) (crime victim in extreme pain—statement about who hurt him was excited utterance).

Alexander argues that introduction of Glenda's statement violated his right to confront the witnesses against him. It is not necessary to reach the merits of this point, since Alexander did not object to the statement on confrontation clause grounds when it was introduced at trial. "Appellant cannot broaden the scope of his objection on appeal from the precise objection made at trial." *State v. Hodges,* 586 S.W.2d 420, 427[12] (Mo.App.1979).

■ Alexander argues that it was error to allow police dispatcher Betty Silvey to testify that she dispatched Officer Boyd to 704 Maryland at 5:50 a.m. on December 6, 1984. Alexander argues that such testimony implied that the time of Ince's death was around 5:50 and that the implication is inadmissible hearsay. First, the state made no argument drawing the attenuated inference Alexander suggests. Second, even if the statement would be hearsay if offered to prove the facts stated, the same statement could nevertheless be admissible for the purpose of explaining why Officer Boyd went to the house to investigate. *State v. Brooks,* 618 S.W.2d 22, 25[6, 7] (Mo. banc 1981); *State v. Clay,* 686 S.W.2d 516, 518[6] (Mo.App.1985). Silvey's statement presents no hearsay problems.

■ Alexander contends it was error to allow Glenda Alexander's attorney to testify that he had filed a certificate of readiness for Glenda in her dissolution case. The attorney stated that he had served notice of the filing on Alexander's attorney. Alexander cites *State v. Willis,* 632 S.W.2d 63, 66 (Mo.App.1982), in which the court held it was error to admit evidence of a life insurance policy on the victim's life to prove defendant's motive to harm the victim, when there was no evidence the defendant knew of the policy.

Unlike the *Willis* case, in this case there was circumstantial evidence that Alexander knew of the filing, since proof of service of the certificate on Alexander's attorney tended to establish that Alexander had knowledge of the filing. At any rate, the import of the evidence was merely to show that Alexander and Glenda were involved in dissolution proceedings at the time of the murder; since Alexander does not dispute that he and Glenda were involved in dissolution litigation at the time of the murder, introduction of evidence about the filing of the certificate of readiness was not prejudicial.

■ Finally, Alexander argues that the court erred in allowing Glenda Alexander's attorney to testify that prior to the murder he obtained a court order prohibiting Alexander from entering Glenda's residence. Alexander argues that the order was irrelevant and that it was void for failure to specify a definite period of effectiveness. Alexander's attack on the validity of the order came in the wrong proceeding, since a judgment entered by a court having jurisdiction of the parties and the subject matter cannot be attacked collaterally on account of even those irregularities or errors appearing on the face of the record. *State ex inf. Voights v. City of Pleasant Valley,* 453 S.W.2d 700, 704[4] (Mo.App.1970). The fact that Alexander had been ordered not to go to Glenda's house (indeed, the record shows he entered a consent decree to that effect) was relevant to show Alexander's deliberation, since it helped to negate the idea that Alexander casually dropped by his own home and was shocked to find his wife there in bed with another man. Alexander also argues that the state did not establish that he had the proper statutory notice of the order, but that theory was not preserved for appeal by objection at trial. *Hodges,* 586 S.W.2d at 427[12].

This judgment is affirmed.

All concur.