**STATE of Missouri, Respondent,**

v.

**George Stanley REVELLE, Appellant.**

**No. 20879.**

Missouri Court of Appeals,
Southern District,
En Banc.

Nov. 12, 1997.

Motion for Rehearing and Transfer
Denied Dec. 15, 1997.

Application for Transfer Denied
Jan. 27, 1998.

M. Shawn Askinosie, David R. Mercer, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT E. CRIST, Senior Judge.

A jury convicted George Stanley Revelle of first degree murder pursuant to § 565.020, RSMo 1994, for the murder of his wife, Lisa Revelle, on September 28, 1994. The trial court imposed a sentence of life imprisonment without possibility of parole or probation. Defendant appeals from the judgment imposing such sentence.

Defendant puts forth twelve points of error, only two of which need be considered in any detail by this Court. This Court finds the State made a submissible case but reverses and remands the case for a new trial because of the admission into evidence of an inadmissible hearsay note authored by Lisa and directed to Defendant.

Defendant contests the sufficiency of the evidence. Accordingly, this Court reviews all evidence together with all reasonable inferences favorably to the verdict, and evidence or inferences contrary to the verdict are ignored. *State v. Twenter*, 818 S.W.2d 628, 631 (Mo. banc 1991). This Court looks only to whether there is sufficient evidence from which reasonable jurors could have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

In September of 1992, Defendant and his wife, the victim, Lisa Revelle, bought and moved into a house in Fremont Hills. They were in their 30s and had two children who were about 7 and 9 years of age. The house cost $342,000 and was mortgaged for about that amount. It was fitted with an elaborate alarm system.

In May of 1994, Defendant applied for life insurance for Lisa. It was approved in July 1994 in the amount of $500,000 with a double indemnity clause. Defendant was the sole beneficiary. Defendant was then hopelessly in debt. He was embezzling funds from his employer, Ozark Bank. He was also stealing money from the City of Fremont Hills while acting as its mayor.

In the spring of 1994, Defendant had a conversation with a bank colleague about the best type of firearms for home defense. Defendant was told a Colt .45 had stopping power. Later that spring they discussed different sized calibers of weapons. In August 1994, the Revelles had a discussion with another couple about fear of someone coming to the Revelle home to harm Defendant.

On September 23, 1994, Defendant and three others spoke of firearms over lunch. They discussed how a .45 would have stopping power and would crack a cinder block. Defendant asked, in reference to home defense, whether a .45 would "do it." He was assured that it would.

At 2:00 a.m. on September 27, 1994, Officer Hicks of the City of Ozark Police Department was dispatched to the Revelle home. Defendant said the motion detector lights on the west side of his house had activated and he wanted the area checked. Officer Hicks found no indication that anyone had been in or around the house. The garage door was open about a foot. Defendant said they left the garage door open for their cat to come and go. Defendant went to work that day. He told his co-workers about the motion lights being activated and that he would keep his shotgun close that night.

At approximately 5:00 a.m. on September 28, 1994, Officer Hicks was again dispatched to Defendant's Fremont Hills residence. As he drove to the residence, he saw no cars. Officer Gray, also with the City of Ozark Police Department and also dispatched to this residence, did not pass any cars and did not see any people running across the golf course near the Defendant's home. A neighbor who had been awakened by a call from the alarm company regarding an alarm at the Revelle home, noticed nothing amiss in the neighborhood when he looked outside his kitchen window. A newspaper delivery person was in the area of Defendant's home

during those early morning hours and saw nothing unusual.

Officers Hicks and Gray found Defendant standing in the door of his house talking on a cellular telephone. Defendant said, "They shot my wife." The children were and remained in their upstairs bedrooms. Lisa had been shot in the head with a .45 caliber gun. She died shortly thereafter.

Defendant said the intruders were wearing dark clothing and one had a ball cap on backwards. He explained these intruders had left the residence through the garage door on the west side of the residence.

Officers Hicks and Gray noted that (1) the garage door was open about two feet; (2) none of the motion detector lights had been activated; (3) no dogs were barking; (4) though the grass was heavy with dew and water from the sprinkler system, there were no footprints; and (5) there were no unusual vehicles or anyone walking in the vicinity. The crime scene was sealed.

Sergeant Isringhausen with the Missouri Highway Patrol also came to the scene of the Revelle shooting. He noted and photographed the readout on the alarm keypad. He noticed the open garage but found no signs of forced entry, either through doors or windows. When he walked past the garage, the motion detector light came on and stayed on in excess of a minute. The Revelles' dog barked. He found no footprints in the dew-covered grass, nor did he find any footprints leading from the residence through the backyard.

Defendant varied his story about what had happened. No attempt is made to detail such variances. An alarm system expert explained there could have been no house intruder or intruders as told by Defendant. There was other evidence indicating Defendant's participation, but further evidentiary detail is not necessary to show a submissible case was made by the State.

The evidence established Defendant's monetary motive for the murder. The chain of circumstances was completed by (1) Defen-

dant's interest in a killer gun, (2) access by Defendant and his two minor children, (3) non-access by other persons, (4) stealing and embezzlement by Defendant, and (5) variances in Defendant's story regarding the intruders. The facts are consistent with each other, consistent with guilt, and inconsistent with any reasonable theory of innocence. The evidence was sufficient to show Defendant knowingly and after deliberation caused the death of Lisa.

■ The one, real, overriding issue in this case concerns the hearsay note of Lisa directed to her husband, the Defendant. During its case in chief, the State introduced into evidence a note written by Lisa to Defendant. The note contained expressions of Lisa's dissatisfaction with the state of their marriage. The note was written as much as six months prior to Lisa's death. Defendant objected to its admission as inadmissible hearsay. The note in pertinent part is as follows:

I can't seem to tell you anything without feeling your anger, .... I'm very scared about our marriage and our family. I can't continue living this way. I'm afraid of you and afraid of your anger and your silence.... I don't want a big new home or a Mercedes or a Highland [sic] membership. I only want someone who loves me and accepts me as I am.... I'm hurt and alone, and the kids feel it too.... I will always love you, but I won't live with you like this.

A similar hearsay issue was exhaustively considered by this Court in *State v. Kelley*, 953 S.W.2d 73 (Mo.App. S.D. 1997).[1] This Court will discuss much of the reasoning of the *Kelley* court as applicable to this case.

■ At oral argument, the State admitted that the marital note was hearsay. Therefore, it was inadmissible unless it fell within one of the exceptions to the hearsay rule. "A hearsay statement is any out-of-court statement used to prove the truth of the matter asserted." *State v. Shurn*, 866 S.W.2d 447, 457[19] (Mo.banc 1993). "Hear-

---

1. On September 30, 1997, the Supreme Court of Missouri denied applications for transfer of *Kel-* *ley*.

say statements are generally inadmissible." *Id.* at 457–58[19]. The State contends the marital note was admissible as a "present state of mind exception." Briefly described, the general rule is that extrajudicial statements of a declarant-victim's present state of mind are excepted from the hearsay ban, provided the declarant's state of mind at the time is an issue in the case. *State v. Boliek,* 706 S.W.2d 847, 850 (Mo. banc 1986) (citing *United States v. Brown,* 490 F.2d 758 (D.C.Cir.1973)). *See State v. Ford,* 639 S.W.2d 573, 574–75 (Mo.1982); *State v. Pagano,* 882 S.W.2d 326, 336[15] (Mo.App.1994); *State v. Kennedy,* 842 S.W.2d 937, 942–44 (Mo.App.1992); *State v. Singh,* 586 S.W.2d 410, 417–19 (Mo.App.1979).

■ From *Singh* onward, Missouri courts have relied on *Brown* to define the scope of the state of mind exception. Under *Brown,* the exception cannot be used to allow hearsay testimony offered primarily to prove the state of mind of an accused; rather, the rule only has application where the proffered hearsay shows primarily the then state of mind of the declarant and declarant's state of mind, in itself, is probative of an ultimate issue in the case. 490 F.2d at 774–780.

■ Most commonly, courts recognize and approve the state of mind exception in homicide cases where an accused claims self-defense, suicide, or accidental death. *Id.* at 767. In such instances, hearsay statements made by the victim that illustrate his or her present state of mind are relevant, and the need for such statements ordinarily overcomes any possible prejudice. *Id. See Singh,* 586 S.W.2d at 418. Where an accused claims self-defense, the deceased's state of mind is relevant to the issue of which participant in the killing was the aggressor. *See Ford,* 639 S.W.2d at 575. Where a defendant concedes his or her presence and involvement in a victim's death but claims an accident or suicide caused the death, the deceased's statements as to fear of guns or similar state of mind are relevant to rebut these defenses. *See Singh,* 586 S.W.2d at 419.

Defendant Revelle testified he thought the man who killed his wife did so accidentally but denied that he, Revelle, had killed her.

In *State v. Post,* 901 S.W.2d 231 (Mo.App. 1995), the state claimed that the defendant drowned his wife in a bathtub. The defendant claimed she drowned in a bathtub while he was away from the scene. At trial, the court admitted out-of-court statements of the victim via other witnesses to the effect that the victim wanted or intended to divorce the defendant. The state asserted that because the defendant contended the death was accidental, the victim's state of mind was relevant. The *Post* court concluded that the trial court committed prejudicial error by admitting the statements because the victim's state of mind was not relevant.

"*The accident cases referred to in the Singh case are those situations where the defendant as the actor causing the death is undisputed but the issue raised is whether he acted intentionally or accidentally.* Defendant here denied any participation in the death of his wife and denied that he was present when the incident which caused it occurred. Under those facts the decedent's particular state of mind that she was unhappy with her husband has no relevance." (Emphasis added.) 901 S.W.2d at 236[9].

As in *Post,* here Defendant denied any involvement in causing his wife's death. Defendant did not claim self-defense, did not assert that his wife died by her own hand, did not admit that he was the actor but caused Lisa's death accidentally, nor did Defendant inject any other plausible issue that would justify an inquiry into the victim Lisa's state of mind. Given the facts of this case, Lisa's state of mind "as to her belief in the future of the marriage" and "as to her future relations with [Defendant]" had no relevance. *See Post,* 901 S.W.2d at 236[9]. Based on *Brown* and *Post,* we conclude that Lisa's statements were not admissible under the state of mind exception to the hearsay rule.

■ The State further argues Lisa's note was admissible as it was "relevant to refute the defense's suggestion that the relationship between Defendant and Lisa had been amicable, with its corresponding suggestion that [Defendant] was not responsible for her death." This argument fails for the simple reason that the State—not Defendant—first

injected the issue of whether Defendant and Lisa's relationship was amicable. Under the doctrine of curative admissibility, "[w]here the defendant has injected an issue into the case [via inadmissible evidence], the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Lingar*, 726 S.W.2d 728, 734–35 (Mo.banc 1987) (citing *State v. Starr*, 492 S.W.2d 795, 799 (Mo.banc 1973)). *See also Shurn*, 866 S.W.2d at 458; *State v. Chambers*, 891 S.W.2d 93, 103 (Mo. banc 1994). However, this doctrine has no applicability in this case because the State first injected the issue of the parties' non-amicable marriage, albeit in opening statements the State made no reference to the memo, and Defendant first mentioned the memo and the "good relationship" between the Revelles. However, before opening statements were made, the trial court had ruled against the Defendant on his pretrial motion to exclude the memo from evidence. Accordingly, the State first injected the issue by offering evidence thereon in its case-in-chief. The State cites no authority for the notion that it can submit incompetent evidence solely to refute an issue not yet injected into the case by the defense. Our independent research discloses no such rule. Since the State first injected the "good marriage" issue into the case, Lisa's note did not qualify as rebuttal evidence, the statements remained inadmissible, and their admission only served to improperly bolster an inference negative to Defendant.

The State also argues that, despite the hearsay nature of Lisa's note to Defendant, such evidence "was relevant and admissible because it established [Defendant's] motive for Lisa's death...."

A similar argument was rejected by the Eastern District in *State v. Randolph*, 698 S.W.2d 535 (Mo.App.1985). In that case, witnesses were allowed to testify over objection that the victim had said that the defendant had robbed Larry Jackson and placed him in a bathtub full of water. Another witness was permitted to testify that victim was afraid of the defendant. On appeal, the state argued that the state of mind of the victim was relevant to prove defendant's motive for killing his victim. The Eastern District rejected that argument, saying:

> Motive concerns the state of mind of the [defendant], not that of the victim.
>
> ....
>
> It was the motive of the [defendant] or the state of mind of the [defendant] to which the prosecution refers, not the state of mind of the victim. This court can conceive of no justification for admitting what the state recognizes is hearsay testimony. It was not relevant to the decedent's state of mind except to show that he feared the [defendant]. His alleged fear of the [defendant] does not even show a motive. One does not kill another because the other is afraid of him. Self-defense was not an issue.

*Id.* at 540, 541.

■ *Randolph* applies to this case. The state of mind exception does not justify or permit hearsay evidence when the primary purpose thereof is to show motive or any other state of mind of Defendant. *Randolph* teaches that although the State is entitled to prove motive in a murder case and has wide latitude in doing so, motive can no more be proved by inadmissible and objected-to hearsay than any other fact. Moreover, *Randolph* rejects any notion that the "present state of mind" exception renders hearsay evidence admissible to prove a defendant's state of mind or motive. Following the views expressed in *Brown* and *Randolph*, we hold that otherwise inadmissible hearsay cannot be admitted under the state of mind exception as direct evidence of Defendant's state of mind or a true indication of Defendant's motive.

■ In reaching this conclusion, we recognize that evidence of marital break-up or threats is admissible and is probative of a defendant's intent, motive, or culpability where proof is by non-hearsay. *See Pagano*, 882 S.W.2d at 331. As explained in *State v. Copeland*, 928 S.W.2d 828 (Mo.banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997):

> Not all out-of-court statements are hearsay. The hearsay rule only prohibits ad-

mission of evidence of out-of-court statements offered to prove the truth of the out-of-court declaration. Defendant overlooks the well-established "verbal acts" rule. Utterances made contemporaneously with or immediately preparatory to an act which is material to the litigation that tends to explain, illustrate or show the object or motive of an equivocal act and which are offered irrespective of the truth of any assertion they contain, are not hearsay and are admissible.

*Id.* at 848 [50,51] (citations omitted).

A similar explanation is found in *State v. Joiner,* 823 S.W.2d 50 (Mo.App.1991):

The testimony of a witness regarding the statement of another is hearsay only when the statement is offered as proof of the matters stated therein. The state did not offer the statements for the truth of the matter asserted. Rather, the evidence was offered to show knowledge and motive. This was a permissible use of the statement.

*Id.* at 55 (citations omitted). However, these well-recognized principles do not aid the State because the State conceded that Lisa's note was hearsay. The marital note was hearsay, not saved by any exception and was prejudicial to Defendant. And, the recent case of *State v. Bell,* 950 S.W.2d 482, 483 (Mo. banc 1997), leaves little doubt that this case must be reversed and remanded for a new trial.

One of Defendant's points alleges the trial judge should have recused *sua sponte* due to lack of impartiality. Defendant concedes he did not move for the judge's disqualification, and the record contains no reference to such issue. Because this issue is unpreserved, we decline to review it. *See State v. Foster,* 854 S.W.2d 1, 7 (Mo.App.1993) (deciding that a defendant may not claim plain error because the judge did not *sua sponte* remove himself after the defendant elects not to disqualify and the strategy goes awry). We do not comment on the propriety of Defendant's moving to disqualify the judge after remand under the provisions of § 545.660.

For the reason this Court cannot know what specific evidence will be offered at the new trial, Defendant's other points relied on

need not be considered. *State v. Santillan,* 948 S.W.2d 574, 577 (Mo. 1997).

The judgment and conviction are reversed, and the cause remanded for a new trial.

SHRUM, J., concurs and files separate opinion.

MONTGOMERY, C.J., and BARNEY, J., each concur in the principal opinion and the concurring opinion of SHRUM, J.

PARRISH, J., concurs in the principal opinion, in the concurring opinion of SHRUM, J., and files separate concurring opinion.

PREWITT, J., dissents in separate opinion.

GARRISON, J., dissents in separate opinion.

CROW, J., recused.

SHRUM, Judge, concurring.

I concur with the majority opinion. I write separately to emphasize that I do not read the majority opinion as saying that the condition of the Revelle marriage "had no relevance" *under all circumstances.* Moreover, contrary to the view expressed in Judge Prewitt's dissent, I do not read the majority opinion as turning "on relevancy." Had I interpreted the majority opinion in that fashion and had such alleged views been dispositive, I could not concur.

The State admits that Lisa's memo was hearsay. In his dissent, Judge Prewitt concedes that Lisa's memo was hearsay, but says: "We should have enough confidence in the jury system that we should not keep this type of relevant evidence out...." Although I, too, have confidence in the jury system, it should be borne in mind that rules of evidence were originally devised for jury trials. *See* 1 JOHN HENRY WIGMORE, EVIDENCE § 4 at 35, § 4b at 107–08 n. 1 (Tiller's rev.1983). In my view, consistent adherence to the law of evidence is essential to maintaining confidence in the jury system.

Our supreme court has said that "even if relevant, hearsay evidence is inadmissible."

*State v. Mease*, 842 S.W.2d 98, 110 (Mo.banc 1992). Certainly, evidence tending to establish motive is relevant. Yet, as this court has said, "motive can no more be proved by inadmissible and objected-to hearsay than any other fact." *State v. Kelley*, 953 S.W.2d at 85 (Mo.App. S.D. 1997).

Defendant's first point relied on charges that "[t]he trial court erred in admitting into evidence [Lisa's memo] concerning marital disharmony between appellant and the victim because this writing was hearsay...." In developing this point, Defendant argues the following:

"The trial court's admission of the marital note was fundamentally flawed for one reason. It admitted the evidence simply because it found the note to be relevant. At no time did the trial court analyze appellant's claim that the marital note was inadmissible hearsay. Instead, the trial court proceeded directly to an analysis of the relevancy of this evidence Specifically, the court examined only whether the marital note was written at a time too remote to be relevant.... Despite appellant's objections to the hearsay nature of the marital note the trial court concluded only that 'it's an issue for the jury ... whether or not this note has probative value at all....' However, this conclusion ignored a foundational and a crucial issue, whether the jury should have been permitted to evaluate the marital note's probative value at all."

The background to this argument and the circumstances surrounding Lisa's memo and its admission can be summarized as follows.

The morning Lisa Revelle was murdered, an investigator found the questioned memo in the basement of the Revelle home. Later, officer Michael Rogers had Lisa's memo in his possession as he interviewed Defendant. Without disclosing that he had the memo, Rogers asked Defendant to characterize his marriage with Lisa. According to Rogers, Defendant repeatedly denied any marital problems, said his marriage was perfect, and denied that Lisa ever gave him ultimatums about divorce or separation. Rogers quoted Defendant as saying: "My life was perfect until today." Thereon, Rogers produced Lisa's memo and showed it to Defendant.

Asked to describe Defendant's reaction, Rogers said: "[H]is face fell, his head went down[,][h]e slumped in the chair...." Rogers testified that he asked Defendant, " 'Would you like me to read you this,' and [Defendant answered] 'No, I know what it says.' "

As a pre-trial matter, Defendant asked the trial court to suppress Lisa's memo via a motion in limine on the grounds that it was "hearsay" and too "remote in time." Initially, the trial court denied Defendant's request to exclude Lisa's memo. A few days later, the court reversed its position and sustained Defendant's request to exclude the memo. However, the trial court indicated it would consider any evidence adduced on the issue of remoteness, i.e., evidence concerning when Lisa may have written the memo. During trial, specifically after jury selection but before opening arguments, the trial court conducted an evidentiary hearing on Defendant's motion in limine. Officer Rogers testified about his "marital status" interview with Defendant, including Defendant's reaction when confronted with Lisa's memo. After both the State and defense presented evidence on the "remoteness" issue, the prosecutor urged the admission of Lisa's memo as follows:

"[MR. HULSHOF, THE PROSECUTOR] ... [T]he purpose for which we offer [Lisa's memo] is to show the inconsistency or the deception that the defendant was attempting to put over the investigators. If there were to be an argument 'Well, but this was written in the hand of the decedent and therefore it's not admissible', we would state—

"THE COURT:—I think the only issue we have—

"MR. HULSHOF—Okay, remoteness—

"THE COURT:—is remoteness—

"MR. HULSHOF—Well, then I would—

"THE COURT;—I've read the motion, and it appears to me that is the only issue that we have concerning the memo.

. . . .

"MR. HULSHOF:—I will forego then the argument about the state of mind and things of that nature.

"THE COURT: I don't think that's the issue.

"MR. HULSHOF: Judge, we feel that this is clearly the document that impeaches the defendant's statement, and we anticipate through discovery from the defense that either cross examination of state witnesses or perhaps even direct examin[ation] of the defendant's witnesses, the jury is going to hear testimony about the state of the marriage and how good it appeared from the outside, from the neighbor's perspectives. We have no way to refute that in that Lisa Revelle has been murdered, and so this is evidence that directly refutes the defendant's version, and we ask the Court to allow the state to introduce it into evidence...."

The trial court then reversed itself and ruled that Lisa's memo was admissible.

Later, during the trial, Rogers told the jury about his "marital status" interview with Defendant. The State then moved for admission of Lisa's memo. Defense counsel responded, saying: "No objection other than what's already on the record previously, Judge."

In my view, defense counsel timely objected that Lisa's memo was "hearsay" and clearly reiterated that complaint in the motion for new trial. Consequently, Defendant preserved for appellate review his claim that the trial court erred in admitting hearsay evidence. *See State v. Penn*, 413 S.W.2d 281, 283[5] (Mo.1967); *State v. Newson*, 898 S.W.2d 710, 715 (Mo.App.1995) (cases holding that objections on the grounds that questioned evidence is "hearsay" preserve the claims of error for appellate review).[1]

Twice in arguments before this court, the State conceded that Lisa's memo was hearsay; accordingly, it must be regarded as presumptively inadmissible. *See State ex rel. State Highway Comm'n v. Baker*, 505 S.W.2d 433, 436 (Mo.App.1974). "In order to avoid trial court error and to enable the court to rule intelligently, the burden is on the party offering the evidence to explain the proper grounds for its admission." *Adams v. Burlington Northern R.R. Co.*, 865 S.W.2d 748, 752[7] (Mo.App.1993). "This is particularly so where the proffered evidence, as here, is normally inadmissible." *Id.* "After objection, a sufficient showing that some exception qualifies the hearsay testimony is a necessary predicate to receipt of the evidence." *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 584 (Mo.App.1981) (citing *Gough v. General Box Co.*, 302 S.W.2d 884 (Mo.1957)).

On appeal, the State tried by various theories to fit Lisa's memo into some hearsay exception that would qualify it as admissible. The majority opinion analyzed the State's arguments and, in my view, correctly concluded that the State failed in all such endeavors.[2]

In his dissent, Judge Prewitt says that evidence about Defendant's *conduct* when faced with Lisa's memo could be seen as an acknowledgment by Defendant that he lied to investigators about the quality of his marriage and thus give rise to an inference of guilty knowledge. I agree. However, the issue is not whether evidence of Defendant's *conduct* was admissible. The record reveals that evidence of Defendant's reaction when confronted with Lisa's memo came in without objection. The dispositive issue is the admissibility of Lisa's memo, i.e., whether there is any hearsay exception that will qualify it as admissible. Neither *State v. Stewart*, 850 S.W.2d 916 (Mo.App.1993), nor *State v. Al-*

---

1. I cannot perceive that this learned, experienced, and capable trial judge would not have understood that defense counsel's objection to Lisa's memo was two-fold: (1) That it was hearsay, and (2) that it was too remote.

2. During oral argument, the State cited *State v. Basile*, 942 S.W.2d 342 (Mo.banc 1997) as holding that objected-to hearsay otherwise inadmissible can be used to prove motive. Judge Prewitt's dissent also cites *Basile* as "relevant here." I disagree. As the dissent shows by its quote from *Basile*, the questioned testimony in *Basile* was

not offered for the truth of the matter asserted; consequently, it was not hearsay. For that reason alone, *Basile* is markedly different from this case. Moreover, the testimony at issue in *Basile* came in without objection. Thus, even if the *Basile* testimony had been hearsay, it would fall within the rule that hearsay received without objection may be considered by a jury. *State v. Thomas*, 440 S.W.2d 467, 470[3] (Mo.1969). In my view *Basile* lends no strength to the State's position.

*len,* 817 S.W.2d 526 (Mo.App.1991), nor any other case of which I am aware, permits the use of hearsay evidence to show consciousness of guilt unless that evidence fits within an exception to the hearsay rule. The State's failure to brief "consciousness of guilt" as grounds for admission of Lisa's memo indicates that it knew the memo was not admissible under that theory.

Nothing in this record suggests that the trial court ever considered or the State ever urged that the challenged testimony was not offered to prove the truth of the victim's statement, and therefore was not hearsay. The record reveals that no limiting instruction was requested and none was given. This is understandable because it does not appear that anyone at trial understood that Lisa's memo was not being offered to prove the truth of its contents. Yet, Judge Garrison's dissent seems to say that we can treat Lisa's memo as properly admitted by considering it, not for the truth of statements therein, but as evidence offered to show Defendant's motive. To take that approach, however, ignores the importance of a limiting instruction. When out-of-court statements of a homicide victim that inferentially implicate a defendant are admitted, the minimum requirement is a limiting instruction. *United States v. Brown,* 490 F.2d 758, 766, n. 25 (D.C.Cir.1973).

The State never explained at trial that it intended to use Lisa's memo for a non-hearsay purpose. Thus, Defendant was effectively denied an opportunity to request a limiting instruction or argue to the jury that the memo should be given limited consideration.

The dissents make a compelling argument that, at least on the issue of motive, the memo is relevant. If Defendant is retried, Lisa's memo may be admissible depending on how it is submitted and used. However, as incongruous as that may seem, this court deals only with the record presented to it.

Again, I concur with the majority opinion.

PARRISH, Judge, concurring.

I concur in the principal opinion and in the concurring opinion of Judge Shrum. In doing so I have considered the dissenting opinions herein and find it appropriate to refer to one of the cases from which a quotation appears in Judge Prewitt's dissenting opinion.

In contending the defendant in this case should not be permitted to complain on appeal about the admission in evidence of the victim's memo because defendant's attorney referred to it in opening statement, Judge Prewitt's dissenting opinion quotes a statement in *Bushong v. Marathon Electric Mfg. Corp.,* 719 S.W.2d 828, 841 (Mo.App.1986), "Plaintiff may not complain of the admission into evidence of the result of the blood test because plaintiff's counsel himself conveyed that information to the jury during his opening statement." The statement in *Bushong,* however, is followed by, " '[A] party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation.' 5 Am. Jur.2d App. and Err., § 716, p. 163."

In *Bushong* the jury was told that certain evidence would be introduced by plaintiff. Plaintiff thereafter introduced that evidence then sought to complain on appeal about the evidence (which he had unsuccessfully sought to preclude by a pre-trial motion in limine). In this case the evidence was introduced, over defendant's objection, by the state, not by the party who complains on appeal. For that reason I do not find *Bushong* to be applicable to this case.

Defendant's trial attorney referred to the memo in his opening statement. However, the jury in this case, as in every other criminal case, was instructed, "The opening statements of attorneys are not evidence." MAI–CR 3d 302.02. Cases holding that jurors are presumed to follow the instructions of the court are legion.

PREWITT, Judge, dissenting.

I respectfully dissent.

The majority opinion, in deciding this matter on a different basis than presented in the trial court, concludes that in a prosecution for murdering his wife, evidence that the wife is unhappy with the marriage "had no relevance." Outside of a confession or eyewit-

ness testimony of the offense, it is difficult to conceive of anything that could be more relevant.

The majority opinion turns on relevancy. It states: "[T]he general rule is that extrajudicial statements of a declarant-victim's present state of mind are excepted from the hearsay ban, provided the declarant's state of mind at the time is an issue in the case." It then concludes that "Lisa's state of mind 'as to her belief in the future of the marriage' and 'as to her future relations with [Defendant]' had no relevance." The majority determined that the memo was not relevant for "state of mind or a true indication of Defendant's motive," but that non-hearsay evidence of marital disharmony is admissible.

Judge Shrum's concurring opinion assumes that the memo is inadmissible hearsay, denies that the majority opinion was decided on relevancy, and yet seems to agree that the memo is relevant. Those opinions are inconsistent and can only be reconciled by ignoring the distinction between relevancy and hearsay discussed later herein. My colleague misreads the majority opinion, the record, and this dissent, as further discussed primarily in footnotes added since his initial concurring opinion was circulated.[1]

Certainly a happy husband in a harmonious marriage is not likely to kill his wife. An interspousal "memo" is so unusual that it indicates problems with the marriage, especially a memo with the tone of this document. Defendant knew of the memo, discussed it with his wife, and admitted the memo and what it said was a serious factor in their relationship. The memo was not timely filed here, but at my request, was later received. It is set forth marginally.[2]

Ironically, the evidence reflects that both the Defendant and the investigating officers recognized the relevance of the condition of the Revelle marriage. During the initial investigation on the day of Lisa Revelle's death, an officer asked Defendant if there had been any marital problems. Defendant portrayed their marriage as "just perfect." The investigating officer then pulled the memo out of his pocket and Defendant's face fell, his head went down, and he slumped in his chair. He said he knew the memo's contents. Defendant said that as a result of the memo the couple had a long talk and things had been better in the last six to eight months of their marriage. The memo was offered into evidence and Defendant's counsel stated, "No objection other than what's already on the record previously...." What was on the record was the contention that

1. Judge Shrum's concurring opinion states that the majority opinion does not say "that the condition of the Revelle marriage 'had no relevance' *under all circumstances.*" I agree with that. The majority opinion concludes that the condition of the marriage "had no relevance" where Defendant was charged with killing his wife. Innumerable other circumstances could exist, but are not before us.

2.                    Memo
   To: George
   From: Lisa
   Maybe this is the only form you will read—like an office memo. I can't seem to tell you anything without feeling your anger so I'll try to write down my feelings.
   I am very scared about our marriage and our family. I can't continue living this way. I'm afraid of you—afraid of your anger and your silence! I find myself telling the kids not to bother you. I find myself tiptoeing around the house and I won't do it any more. Life's too short for this garbage. If you can't talk to me then find someone you can talk to.
   Your indecision about your job, our home, everything right now has nothing to do with me—find out why you're stalling. I don't want a big new home or a Mercedes or a Highland membership. I only want someone who loves me and accepts me as I am. I need someone who cares what I think and wants me to be a part of his life. What do you want?
   I've often thought that it would be easier if you were having an affair—at least that would be something tangible I could deal with but I don't know how to deal with this. I've tried to give you time but nothing happens and you don't seem to want it to change. You probably don't even believe anything is wrong.
   Just to live in a house together isn't enough. I try to find out about your work but you give me one or two word replies. When did you ever ask me about my summer school classes? I want to be a part of your life and maybe you don't care about mine but at least be honest enough to tell me!
   I'm hurt and alone and the kids feel it too. I see Stan shutting down his feelings too and it makes me sad. Candice is just plain angry and I know she can feel my pain and your anger.
   I will always love you but I won't live with you like this.

the memo was too remote. Judge Shrum's concurring opinion refers to Defendant's brief as to his current objections, but does not correctly analyze the record as to the objection made before the trial judge.[3]

There was no discussion when offered as to the basis for admissibility of the memo. In argument during hearings on the pretrial motions, the State initially indicated that the memo was relevant because it showed that Defendant was seeking to mislead the investigators. It is clearly the law that conduct and statements of the Defendant occurring after the commission of a crime, which are relevant to show consciousness of guilt, are admissible. *State v. Eighinger,* 931 S.W.2d 835, 839 (Mo.App.1996). "Guilty knowledge may be inferred from false statements to police."[4] *State v. Stewart,* 850 S.W.2d 916, 920 (Mo.App.1993). *See also State v. Allen,* 817 S.W.2d 526, 528 (Mo.App.1991)("false statements to police ... can give rise to an inference of guilty knowledge").

Defendant's conduct when confronted with the memo could be interpreted as an acknowledgment that he sought to mislead the investigators regarding the condition of the marriage. Neither party, in their briefs or in oral argument, addressed the memo's admissibility on that theory, nor does the majority opinion. The latter discusses the relevancy of the memo on the issues briefed, not on just the theories before the trial court. Based on such cases as *Stewart* and *Allen,* the trial court did not abuse its discretion in admitting the memo on what was one of the State's theories at trial.[4]

There was, likewise, no abuse of discretion in admitting the memo upon the theories briefed here. We should have enough confidence in the jury system that we should not keep this type of relevant evidence out on the basis that the State said it was hearsay, as it was. Numerous decisions state that a victim's state of mind is not hearsay or is not subject to the hearsay rule, and is admissible and relevant. *See, e.g., State v. Boliek,* 706 S.W.2d 847, 850 (Mo. banc 1986), *cert. denied,* 479 U.S. 903, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986). *State v. Isaiah,* 874 S.W.2d 429, 441 (Mo.App.1994); *State v. Singh,* 586 S.W.2d 410, 417 (Mo.App.1979).[5]

*State v. Kelley,* 953 S.W.2d 73 (Mo.App. S.D. 1997), discussed by the majority, concerned double or multiple hearsay and could have, but did not, turn on that basis. *Kelley* determines that some statements made to others were not relevant because the state of mind of the victim is irrelevant. *Kelley* may be correct because defendant apparently was not aware of the statements made by the victim. Had he been, then neither its logic nor its result was proper.[6]

---

3. According to the record, the trial court interpreted the sole issue regarding the memo to be remoteness. That appears to be an accurate assessment. In Defendant's amended motion in limine, he states that the memo "constitutes remote hearsay" and "requests a hearing out of the jury's presence, requiring the State to prove that the evidence is not remote in time." At such a hearing, evidence was presented by the State and Defendant. The trial court interrupted the State's argument as to why the memo was relevant, because of misleading the investigators, stating that the only issue is "remoteness." Hearing that, the State then announced it would forego argument about the state-of-mind "and things of that nature." Counsel for Defendant neither corrected the court's assumption nor made any objection or argument regarding "hearsay." The trial court then correctly determined that the time, weight and probative value of the memo was for the jury. When the memo was offered, Defendant's attorney stated, "No objection other than what's already on the record previously, judge."

4. Judge Shrum's concurring opinion agrees that the evidence of Defendant's reaction when confronted with the memo was relevant. As an integral part of that evidence, the memo should be admissible. The concurring opinion then concludes that "the State's failure to brief 'consciousness of guilt' ... indicates that it knew the memo was not admissible under that theory." The decision here cannot be considered on such an assumption. Defendant, as Appellant, had the burden to show error in the trial court. The State is not required to brief anything or even to file a brief.

5. Some of the cases indicate that state of mind is not hearsay, but an examination of WIGMORE hereinafter cited shows that such evidence is hearsay but is nevertheless admissible, as not barred by the hearsay rule. Such evidence is usually offered not for the truth of the facts which the person thought but for the truth that those thoughts existed.

6. However, when there is a problem in a marriage, is it not unusual to conclude that only one

Both the majority opinion and the concurring opinion by Judge Shrum manipulate or misconstrue the law and the facts here in a misguided effort to apply *Kelley*. The inapplicability of *Kelley* is logically explained in Judge Garrison's dissent. *Kelley* relies, at least in part, on *State v. Post*, 901 S.W.2d 231 (Mo.App.1995). *Post* clearly indicates that the note is relevant as to motive and clarifies the difference between *Kelley* and this matter. Here, as Defendant was aware of the memo, it may have affected his actions. *Post* states, 901 S.W.2d at 236:

> Under those facts the decedent's particular state of mind that she was unhappy with her husband has no relevance. Nor does that state of mind become relevant to the issue of motive because the State provided no evidence that Defendant was aware of his wife's intentions to obtain a divorce if indeed she did so intend.... In the absence of knowledge by Defendant of these intentions they do not have relevancy and were erroneously admitted.

The majority opinion indicates that it was the State, not the Defendant, who first injected the issue of the parties' relationship. Defendant, however, first put the memo's existence and content before the jury. No reference to the memo was made in the State's opening statement. Following the State's opening statement, Defendant's attorney made an opening statement, mentioning the "good relationship" between the Revelles, stating that the memo was well over two-and-a-half years old, and that Defendant kept the memo to remind himself that he had to communicate with his wife. The attorney said it was found in a box of Defendant's things, not Lisa Revelle's.[7]

The majority opinion, by concluding that Defendant can complain on appeal of evidence that he first put before the jury, is contrary to the general rule that a "defendant cannot complain about matters that he himself brings into the case." *State v. Radley*, 904 S.W.2d 520, 523 (Mo.App.1995).

Such a general rule was specifically applied in *Bushong v. Marathon Electric Mfg. Corp.*, 719 S.W.2d 828 (Mo.App.1986). There, plaintiff filed a motion in limine seeking to keep out of evidence that a blood-alcohol test had been administered to plaintiff and the result of the test. The motion was denied in a pre-trial order. On the day of trial, plaintiff's counsel renewed the motion before the calling of veniremen for voir dire. The trial court again denied the motion. Thereafter, plaintiff's counsel, in opening statement, referred to the blood test and its result. This District concluded: "Plaintiff may not complain of the admission into evidence of the result of the blood test because plaintiff's counsel himself conveyed that information to the jury during his opening statement."

In his concurring opinion, Judge Parrish seeks to distinguish *Bushong*, referring to the statement that a party who has introduced evidence may not complain. Judge Parrish fails to mention that the complaint in *Bushong* was two-fold: (1) the result of a blood test which plaintiff did not introduce into evidence but told the jury in his opening statement; and (2) evidence of plaintiff's drinking which he did introduce and which caused the court to refer to a party introducing evidence "concerning a certain fact." It is the first contention, the result of the blood test, that caused Judge Flanigan, in writing for this District, to conclude that plaintiff could not complain because his attorney "conveyed that information to the jury during his opening statement." *Bushong* states "plaintiff did not introduce into evidence the result of the blood test".

A similar result occurred in *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App.1982), a suit seeking damages for the wrongful death

---

spouse knew of it? *Kelley*, as does the majority here, turns on relevancy. By admitting the memo may be relevant, Judge Shrum's concurring opinion distinguishes and is inconsistent with both *Kelley* and the majority opinion which relies on *Kelley* to conclude that the memo "had no relevance." I admire Judge Shrum's tenacity, although misguided attempt, to support *Kel-*

*ley*. Unfortunately to that end, he raises issues inconsistent with this record.

7. The majority opinion, as initially circulated, failed to note that Defendant first mentioned the memo to the jury. Following this dissent's circulation, the majority opinion was changed to reflect that fact.

of plaintiff's wife. Following the denial of a motion in limine, plaintiff's counsel told the jury panel during voir dire that plaintiff had remarried. The court held in applying "the rule which has been applied for years in criminal cases," that since a motion in limine cannot in and of itself be the basis of reversible error, plaintiff was required to await an attempt to introduce the evidence and then object, rather than bring it into the case himself.

When a spouse is charged with killing the other they would like to show, by inference or otherwise, a "good relationship," as the Defendant here announced in his opening statement, he would and attempted to do. Should not contrary evidence be available to the jury. Amazingly, my colleagues say no.[8]

I see no point in lengthening this opinion by discussing the other cases cited by the majority, as a reading of them, as well as the majority's discussion, establishes that they do not support excluding the note under these facts. Judge Garrison explains this in irrefutable reasoning in his dissenting opinion. I move to cases and authorities which are relevant here.

Certainly how the Defendant might have envisioned his wife's state of mind is relevant, as he may have acted upon it. Trial courts have discretion in determining relevancy. *State v. Shurn,* 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). "Parties generally have wide latitude in developing evidence of motive." *Id.* Where the Defendant claims innocence, evidence of motive is relevant. *Id. See also Boliek,* 706 S.W.2d at 850 (admission of evidence that victim

feared defendant was going to kill her not an abuse of discretion); *State v. Ivory,* 916 S.W.2d 337, 339 (Mo.App.1995)(hearsay evidence relevant as to motive); *State v. Herington,* 520 S.W.2d 697, 700 (Mo.App.1975)(hearsay statements relevant as they may have formed the basis for subsequent actions); *People v. Jones,* 293 Mich. 409, 292 N.W. 350 (1940)(letter admissible to show motive to commit assault).

When a spouse is charged with murdering a spouse, evidence of the relationship and affection or lack thereof is allowed in Missouri (and apparently all other common-law jurisdictions), including out-of-court statements which may reflect this. In discussing exceptions to the hearsay rule, VI WIGMORE, EVIDENCE, § 1730, p. 150 (Chadbourn rev. 1976), states:

> A special application is also found in actions for alienation of affections, criminal conversation, divorce, or wife murder, where the *state of affections of the wife to the husband,* or of the husband to the wife, becomes material. Here the declarations of the person as to her or his own state of affections are admissible under the present principle. *In most instances, such expressions are chiefly useful in an indirect or circumstantial way only* [citations omitted]; ... and it is said merely that declarations made at a time when there was no motive to deceive are admissible. [emphasis in original][9]

Cited following the above quote are numerous decisions in Missouri and elsewhere, including those where writings of the victim were offered. Missouri has long allowed the

---

8. The concurring opinion by Judge Shrum refers to my initial reference to the jury system, ignores the authorities cited after that statement, and concludes: "consistent adherence to the law of evidence *is essential to maintaining confidence in the jury system.*" Yet later, contrary to the majority opinion, seems to agree that "adherence to the law of evidence" makes the memo admissible as to motive, a theory briefed by the parties and rejected by the majority opinion. Such candid admission by Judge Shrum fortifies my admiration of his integrity. Questions remain, however, of his reasoning in this matter.

9. Obviously and logically, to be an "exception" to the hearsay rule, the evidence must be hearsay

but admissible, irrespective of the general rule. Otherwise it would be outside the rule, not an "exception" to the rule. Judge Shrum's concurring opinion emphasizes that because in oral arguments before this Court the State agreed that the memo was "hearsay," it was inadmissible. The State could hardly dispute that it was hearsay. Clearly it was. What else could the statement of a deceased victim to a murder be in a trial for one accused of murdering her? The question is not whether it is hearsay, but is it admissible, as were numerous and less relevant statements of murder victims in cases herein cited.

evidence which the majority opinion excludes. In *State v. Callaway*, 154 Mo. 91, 55 S.W. 444, 450 (1900), a man was charged with the murder of his wife. The court there stated: "Anything tending to show want of affection, whether on the part of one or both of the parties, is competent on the grounds of disclosing motive...." *See also Commonwealth v. Barnak*, 357 Pa. 391, 54 A.2d 865, 876 (1947): "When any defendant is charged with murder, evidence of the prior relationship between him and his alleged victim is always relevant."

In *State v. Danforth*, 654 S.W.2d 912 (Mo. App.1983), the defendant was charged with conspiracy to commit the capital murder of her husband. The husband was found dead prior to the charges brought against defendant. Appealing from her conviction, defendant contended that certain statements attributed to her husband were hearsay and were improperly admitted. The court stated that the evidence was offered to show the decedent's state of mind, and was relevant as it supported testimony that defendant wanted her husband killed on a certain date "because she thought if she did not sleep with him that night he would cut her out of his will." *Id.* at 921. *See also Lenza v. Wyrick*, 665 F.2d 804, 810 (8th Cir.1981)("Under Missouri law the declarations of the decedent in a homicide case are admissible to prove the decedent's state of mind where that is relevant.").

In *State v. O'Daniel*, 62 Haw. 518, 616 P.2d 1383 (1980), defendant was found guilty of manslaughter in the death of his wife. On appeal, he argued that a letter written by his wife to a friend was improperly admitted into evidence. The decedent stated in the letter that her marriage was failing and that she intended to seek a divorce, and that defendant was opposed to a divorce and their separation. The court determined that statements made by the victim were admissible under the state-of-the-mind exception to the hearsay rule, concluding that "[t]here is no doubt that the state of the O'Daniel marriage

was critical to the prosecution in proving the motive or intent issue." *Id.* at 1389.

In *State v. Basile*, 942 S.W.2d 342 (Mo. banc 1997), defendant was hired by Richard DeCaro to kill Elizabeth DeCaro, Richard's wife. Two witnesses testified to statements of the victim reflecting in part on the relationship of the marriage. In rejecting the contention that this evidence was improper, at 357, the Missouri Supreme Court said:

> The apparent purpose of offering the statements of Elizabeth DeCaro was not to prove the truth of her statements, but to show that the DeCaro's marital relationship was breaking up and, further, that Elizabeth had knowledge of the insurance fraud scheme involving the van. Her attitude toward Richard and knowledge of his criminal involvement were relevant to establish Richard DeCaro's motive to murder Elizabeth. Out of court statements offered to prove knowledge or state of mind of the declarant are not subject to a hearsay objection. [Citing cases.]

Contrary to the statement in Judge Shrum's concurring opinion that *"Basile* is markedly different from this case," because in *Basile* the questioned testimony "was not offered for the truth of the matter asserted," *Basile* is actually very similar. In this case, one of the reasons the State indicated it offered the memo was to show Lisa's state of mind regarding her marriage, a well-established exception to the hearsay rule. *Basile* directly contradicts the majority's assertion that the memo was not admissible on the issue of motive.[10]

In his concurring opinion, Judge Shrum acknowledges that "the dissents makes a compelling argument ... on the issue of motive," that "the memo is relevant." The parties briefed this issue, and the majority opines: "[W]e hold that otherwise inadmissible hearsay cannot be admitted under the state of mind exception as direct evidence of Defendant's state of mind or a true indication of Defendant's motive." When the majority opinion discusses issues briefed, how can this concurring opinion claim that the dissents, in

---

**10.** *Basile* also supports Judge Shrum's apparent agreement with the dissents that the memo is relevant for motive.

discussing the same issues, go outside the record? The concurring opinion necessarily concludes that when the majority opinion discusses an issue it is proper, but when the dissents do so, they go outside the record and the issues presented. If so, the dissents are following the lead of the majority. The simple answer to this, as earlier noted, is that the parties and the majority opinion ignore the issue before the trial court: whether the memo was too remote to be presented to the jury. Its truth or relevance was never doubted. By his comments, Defendant vouched for both.

In Defendant's brief, he acknowledges that there "is no doubt that: (1) The appellant recognized the note when Officer Rogers first showed it to him; and (2) that as a result of the note Mr. Revelle worked harder to maintain a strong relationship with his wife." Obviously, Defendant believed the facts reflected in the memo, had a long talk with his wife regarding it, and may have acted on those facts. Defendant was admittedly aware of the memo and kept it to remind himself to communicate with his wife. He said things had gotten "better," but apparently were not "perfect," as he had first said. The jury could thus find that the victim's thoughts as reflected in the memo, and as envisioned by the Defendant, continued until her death.[11]

Nevertheless, the majority, in their opinion, find that the memo was not relevant for "state of mind or a true indication of motive," or apparently for any other purpose. When evidence reflects that a person steals from his employer and his neighbors, is in financial difficulty, and has life insurance paying one million dollars on the decedent, should not the jury also know that the marriage may have problems? By their opinion, the majority have established a rule contrary to most, and I believe all, reported decisions regarding the relationship of a defendant and the victim.

The majority opinion states: "In reaching this conclusion, we recognize that evidence of marital break-up or threats is admissible and is probative of a defendant's intent, motive, or culpability where proof is by non-hearsay." By doing so, it determines relevance based on whether the evidence is hearsay. Whether evidence is "probative" of a defendant's motive cannot depend on it being hearsay. It depends on relevance. The majority opinion thus confuses and improperly combines two separate considerations: hearsay and relevance. "Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to produce it." 31A C.J.S. *Evidence* § 259, p. 491 (1996). "Evidence is relevant if it tends to prove or disprove a fact in issue." 31A C.J.S. *Evidence* § 198, p. 382–83 (1996).

Relevance is not determined by whether the evidence is hearsay. State-of-the-mind evidence is admissible, notwithstanding that it is hearsay, but is an exception to the hearsay rule. Where such evidence bears upon the relationship of the defendant and the victim it is certainly relevant.

As stated in *State v. Parker,* 886 S.W.2d 908, 925 (Mo. banc 1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995), hearsay and relevance are not the same. *Parker* states that an objection on hearsay does not preserve the contention that hearsay is not relevant. *See also State v. Foust,* 920 S.W.2d 949, 955 (Mo.App.1996)(trial court erred in excluding hearsay as irrelevant where objection was "hearsay," not relevance).

The distinction between the rule against hearsay and relevance is discussed in *Mash v. Missouri Pac. R.R. Co.,* 341 S.W.2d 822, 827 (Mo.1960). The court there stated that if the hearsay rule does not apply, evidence "may or may not be received, according as it has any relevancy in the case; but if it is not received this is in no way due to the Hearsay rule." (quoting from VI WIGMORE, EVIDENCE, § 1766, p. 250). The court concluded:

Under this principle, and considering the purpose for which the statement was offered, its admissibility was governed not

---

11. Remoteness of the note was for the trial court and jury. *See State v. Hodge,* 655 S.W.2d 738, 744 (Mo.App.1983)(conduct and statements of defendant as far back as 17 months from hired assault on ex-wife admissible in discretion of trial judge).

by whether it was hearsay, but by whether it had any relevancy in the case. Consequently the hearsay objection was not well taken, and it not having been objected to on the grounds of want of relevancy, we are not called upon to decide whether it was or was not relevant.

The majority opinion states that evidence of marital problems "is admissible and is probative of a defendant's intent, motive, or culpability where proof is by non-hearsay," but does not explain why evidence that is an exception to the hearsay rule covering the same subject has different relevancy considerations than non-hearsay evidence. Obviously, there is no explanation.

Evidence is either relevant or it is not. Whether it is hearsay may affect its admissibility but cannot change its relevancy.[12]

Evidence is relevant or not, irrespective of whether it is hearsay. For example: (1) "I saw Joe shoot Bill;" (2) "Bob told me he saw Joe shoot Bill." Both are relevant, but (2) is obviously hearsay and inadmissible.

Where hearsay may be involved, as it is in this matter, the question of admissibility is a two-step process (in either order): (1) Is it hearsay or an exception to the hearsay rule? (2) Is it relevant? Whether it is relevant has no relationship to whether it is hearsay or is barred by the hearsay rule. The steps are obviously separate and independent of each other and are related only because certain evidence may be questioned by both relevance and hearsay. Relevancy is not dependent upon whether the evidence is hearsay, nor is the reverse true. Evidence can be an exception to the hearsay rule and be irrelevant but evidence cannot be, as the majority opinion concludes, irrelevant because it is hearsay.

Nevertheless, the majority opinion reaches that conclusion. Let us look at it further: (1) Suppose Lisa Revelle survived and a charge of attempted murder was brought against Defendant. She testifies as to the contents of the memo and that she gave it to Defendant and they had a detailed discussion regarding it. Obviously, there is no hearsay objection possible as she personally testifies. The contents of the document are, of course, relevant, as they pertain to the marital relationship.

Now, this situation: · Lisa Revelle, in a memo found after her death, strongly indicates that she is unhappy with her marriage. This is within the state-of-the-mind exception (one of the theories the State mentioned in discussing the admissibility of the memo). No bar of the hearsay rule here. The next question is: Is it relevant? Of course, as it goes to the relationship of the marriage and Defendant's attempt to mislead the investigating officers regarding that relationship.

The contents of the memo are either relevant or they are not. If they were relevant if Lisa survived and testified about it, then they are relevant where she did not. Under either scenario, the memo is not more relevant in one instance than the other, and in both the memo is admissible. It is hearsay where she does not take the stand, but the hearsay rule is no bar. As the authorities above-outlined establish, and as Judge Shrum's concurring opinion also suggests, the memo's relevance can hardly be questioned.

Any contention that the memo was used for a purpose other than the purpose received is not before us. Where Defendant contemplates that evidence may be used or is being used for improper purposes his "remedy ... lies not on appeal but in requesting a limiting instruction from the trial court." *State v. Hubbard,* 659 S.W.2d 551, 557 (Mo. App.1983). *See also State v. McClure,* 504 S.W.2d 664, 669 (Mo.App.1974)(to prevent prejudice, a party may seek instruction limiting the extent to which, and the purpose for which, the jury may consider evidence). No such request was made here regarding the memo, nor, as Judge Shrum's concurring opinion suggests, was Defendant ever "effectively" or otherwise denied an opportunity to do so.

---

12. The majority opinion states: "[T]he general rule is that extrajudicial statements of a declarant-victim's present state of mind are excepted from the hearsay ban, provided the declarant's state of mind at the time is an issue in the case."

It then concludes that "Lisa's state of mind 'as to her belief in the future of the marriage' and 'as to her future relations with [Defendant]' had no relevance." How then can anyone say the majority opinion did not turn on relevancy?

In his concurring opinion, Judge Shrum concludes that it was "understandable" why no limiting instruction was requested, "because it does not appear that anyone at trial understood that Lisa's memo was not being offered to prove the truth of its contents." What this concurrence fails to say is that everyone at trial "understood" that, aside from the illegal search contention, there was but one issue as to the memo, whether it was too remote. There was no issue as to whether or not it was being offered to prove the truth of its contents. It was, however, as Judge Garrison explains in his dissent, admissible whether or not it was true. This was obviously "understood" by Defendant's counsel, and the only issue presented in his Amended Motion in Limine was that it was "remote hearsay." At the hearing on the motion, the State suggested that the memo was admissible to show that Defendant misled the investigators, as he acknowledged that he did, and for "state of mind." Neither then nor when the memo was introduced did Defendant make any argument or contention contrary to either theory.

The concurring opinion by Judge Shrum refers to Defendant's Motion in Limine, quoting the motion that the memo was "hearsay." That motion was filed and a hearing held on January 19, 1996, eighteen days before the memo was formally admitted. At the conclusion of that hearing, the court denied the motion as to the memo. No record of that hearing was filed here. Only in that motion is there unmodified reference to the memo being hearsay. Even if the initial Motion in Limine raised a proper "hearsay" objection it preserved no error when the memo was offered eighteen days later. *See State v. Blackman,* 875 S.W.2d 122, 143 (Mo.App.1994)(following the denial of a motion in limine, to preserve error on appeal, "defendant was required to object on the appropriate ground at the time the evidence was offered"). *See also State v. Tidwell,* 888 S.W.2d 736., 740 (Mo.App.1994)(following the denial of a motion to suppress, "to preserve the issue ... a specific objection" must be made when items are offered); *State v. Dwyer,* 847 S.W.2d 102, 103 (Mo.App.1992)(following a ruling on a motion

in limine, the parties must proceed "as if no in limine ruling had been made").

"[I]t is required that any objection to evidence be sufficiently clear and definite so that the court will understand the reason for the objection." *State v. Bartholomew,* 829 S.W.2d 50, 53 (Mo.App.1992). "An objection which covers a broad range of situations which are not readily apparent, does not preserve error." *Id.*

On January 24, 1996, Defendant filed a "First Amended Motion in Limine," contending that the memo was "remote hearsay." On January 31, 1996, the court held a hearing on Defendant's Motion for Continuance and after denying the motion announced it was sustaining the Motion in Limine as to the memo and advised that before attempting to offer the memo, "the State will need to make a record outside the hearing of the jury." That hearing occurred after the trial commenced, the day before the memo was introduced. There, the trial judge stated he had read the motion and the only issue was "remoteness." The next day when the memo was offered Defendant's counsel stated, "No objection other than what's already on the record previously...." The trial court may well have construed this to cover the motion to suppress due to an illegal search of the house, or remoteness, but nothing further. For further details on Defendant's amended motion in limine, see note 3, *infra.*

With all due respect to my colleagues, they are caught up in semantics as to what is hearsay and how the hearsay rule is applied, and have failed to properly analyze the law, this record, and to consider the practicalities and common sense of this matter. Four of the majority, in agreeing with Judge Shrum, believe: "If Defendant is re-tried, Lisa's memo may be admissible depending on how it is submitted and used." Thus, the majority reverses and remands for a new trial when at least four of them acknowledge that on retrial the evidence should be the same. Where, then, is the error?

No reason has been presented or exists indicating that disharmony in the marriage is not relevant. The jurors should know, in considering whether Defendant murdered his wife, the evidence as to the condition of the

marriage. Contrary to the above authorities, logic, and common sense, the majority opinion concludes: "Given the facts of this case, Lisa's state of mind 'as to her belief in the future of the marriage' and 'as to her future relations with [Defendant]' had no relevance."

As Defendant received a fair trial, with no error in the respects briefed or otherwise, I would affirm the conviction.

GARRISON, Judge, dissenting.

I respectfully dissent. Like Judge Prewitt, I disagree with any suggestion in the majority opinion that the note or letter from Lisa Revelle to Defendant was not relevant. Evidence which establishes a defendant's motive to commit the crime for which he is on trial is relevant. *State v. Snider*, 869 S.W.2d 188, 193 (Mo.App. E.D.1993). *See also State v. Shurn*, 866 S.W.2d 447, 457 (Mo. banc 1993), *cert. denied*, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Motive is the moving cause which induces action, and has to do with desire. *State v. Young*, 425 S.W.2d 177, 182, n. 5 (Mo.1968); *State v. Willis*, 632 S.W.2d 63, 65 (Mo.App. E.D. 1982). To be relevant, it must be shown that the evidence which tends to establish motive was known to the defendant. *Willis*, 632 S.W.2d at 65. It is not necessary that the evidence which allegedly supplies a motive be shown to be true, rather, the important factor is what the defendant believed. *See id.*

In the instant case, I believe that the note was relevant concerning Defendant's motive to commit the crime with which he was charged. The note was evidence that Defendant's wife had told him that she was unhappy with the marriage and felt that she could not continue to live under those circumstances. Considering the other evidence of Defendant's lifestyle, the thefts he had committed to support that lifestyle, his precarious financial condition, and the existence of a $500,000 double indemnity life insurance policy, which was due to terminate soon, on his wife's life, the note could have been interpreted as evidence of a moving cause to commit the crime. Whether Mrs. Revelle truly felt that way is not the crucial question on the matter of motive; rather it is what

Defendant believed. As such, I believe the note was relevant. That does not, however, necessarily answer the question of whether it was admissible.

The majority opinion concludes that the note should have been excluded as hearsay. This presumes that a sufficient objection on that basis was made. I do not believe that Defendant's objection based "on what's already on the record previously," was sufficient to preserve that issue. As Judge Prewitt points out, the objection was not specific. Additionally, objections to the admissibility of evidence, made before trial, preserve nothing. *Gage v. Morse*, 933 S.W.2d 410, 417 (Mo.App. S.D.1996).

Nevertheless, the majority opinion relies on *State v. Kelley*, 953 S.W.2d 73 (Mo.App. S.D. 1997), *United States v. Brown*, 490 F.2d 758, 774–780 (D.C.Cir.1973); and *State v. Singh*, 586 S.W.2d 410, 417–19 (Mo.App. S.D. 1979), to support the proposition that hearsay evidence cannot be admitted under the state of mind exception to show the mental state or motive of the defendant. In *Kelley*, a division of this court said that "[t]he state of mind exception does not justify or permit hearsay evidence when the primary purpose thereof is to show motive or any other state of mind of Defendant." 953 S.W.2d at p. 85. The *Kelley* court, however, recognized that "evidence of marital break-up or threats is admissible and is probative of a defendant's intent, motive, or culpability where proof is by non-hearsay." *Id.*

I agree with the result in *Kelley* under its facts. It is the universal application of the rule of exclusion announced in *Kelley*, regardless of the circumstances, with which I cannot agree. In *Kelley* the statement of the decedent which resulted in the reversal was multiple hearsay. Significantly, the statement that was the subject of the opinion in *Kelley* was made by the decedent to a third party witness. In the instant case, the statement in question was made directly to Defendant.

*Kelley* also relies heavily on *Brown* and *Singh*. Neither *Kelley*, *Brown*, nor *Singh*, however, involved the admissibility of statements that had been communicated to the

defendant by the decedent and which could be relevant to motive. *Brown* and *Singh* involved statements by the decedent expressing fear of the defendant. In fact, *Brown* contains language that could be interpreted as limiting its scope to cases involving a victim's hearsay statements of fear of the defendant in homicide cases.[1] While the note in the instant case contains an expression of fear, other parts indicated that Mrs. Revelle's state of mind was such that she did not intend to continue living with Defendant under the then existing circumstances.

*Brown* indicates that under the state of mind exception to the hearsay rule, the *victim's* state of mind must be relevant to some material issue in the case, and the extrajudicial statement must be probative of that state of mind. 490 F.2d at 774. The same principle is carried forward in *Kelley*, 953 S.W.2d at 83, and *Singh*, 586 S.W.2d at 419.

In holding that statements by the victim are not admissible to show motive by the defendant, *Kelley* also referred to *State v. Randolph*, 698 S.W.2d 535 (Mo.App. E.D. 1985). In *Randolph*, the appellate court rejected the state's contention that statements by the victim alleging that defendant had committed a similar act on another occasion, and that he was afraid of defendant, were admissible concerning the defendant's motive. 698 S.W.2d at 539–542. *Randolph*, however, also involved a situation where there was no indication that the subject statements by the victim had been made to the defendant, could have reasonably affected his state of mind, or were relevant to his motive to commit the crime. The court did, however, say that "there may be other fact situations which would make the state of mind of a deceased relevant ..." 698 S.W.2d at 540. This is consistent with the statements in *Brown* that "the victim's state of mind must be relevant to some material issue in the case," and "there is no claim of self-defense, suicide, accidental death *or any other plausible issue that would justify an inquiry into the victim's state of mind.*" (em-

phasis added) 490 F.2d at 774, 780. *Singh* recognized that "factors which make the state of mind of an alleged victim of a homicide relevant are myriad." 586 S.W.2d at 419.

I believe that a statement made by the victim of a homicide to the defendant cannot be summarily dismissed as irrelevant and inadmissible if it expresses the victim's existing state of mind, and is also relevant to the defendant's motive. In that instance, it seems to me that the expression of the *victim's* state of mind is relevant if it was communicated to the defendant and could have provided a motive for the murder.

The hearsay rule prohibits evidence which constitutes an out-of-court statement used to prove the truth of the matter asserted. *Shurn*, 866 S.W.2d at 457. In *Brown*, the court acknowledged the rule of multiple admissibility, saying "[a] statement which would be pure hearsay as to the truth of the matters alleged is not made inadmissible thereby if introduced solely to show the declarant's state of mind and if accompanied by a limiting instruction." 490 F.2d at 763. The *Singh* court also recognized this distinction, but did not explore it. 586 S.W.2d at 417. If an out-of-court statement is not offered for the truth of the matters asserted therein, by definition it is not hearsay, and there is no issue about whether the state of mind exception applies. If it is offered for the truth of the matter asserted, then the out-of-court statement will be excluded, on proper objection, unless it fits within one of the recognized exceptions to the hearsay rule.

In the instant case, there were discussions between counsel and the trial court in pretrial hearings relating to Defendant's motions to suppress. Assuming, for the sake of argument, that those discussions sufficiently delineate the purpose the note was later offered, they indicate that the State was seeking to admit the note to demonstrate that Defendant lied to investigators about

---

1. In *Brown* the court said, "[t]he threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is

the condition of his marriage.[2,3] When used in this fashion, the note could be characterized as hearsay because it would be relevant only if the matters contained therein were true. Accordingly, it would be admissible, if otherwise relevant, only if it fit within a recognized exception to the hearsay rule. If it were offered only to show Mrs. Revelle's state of mind as it related to Defendant's possible motive to commit the murder, without regard to its truth, it would not be hearsay and would be admissible without the necessity of applying an exception to the hearsay rule.

In my opinion, the trial court did not err in admitting the note. If it was offered for the truth of its contents, I believe it was relevant as an expression of Mrs. Revelle's existing state of mind at the time it was written, and was relevant and admissible, under the circumstances here, as bearing on Defendant's motive to commit the crime. As indicated earlier, however, it is what the defendant believes to be true, rather than what may actually be true, which is important when considering evidence of motive. Bearing that in mind, if the note was not offered for the truth of its contents, the hearsay rule would not bar its admission, and I believe it was relevant as bearing on the existence of a motive.[4] Under neither scenario was the note precluded by the hearsay rule, even assuming a sufficient objection on that basis was made.

I would affirm the conviction to the extent it is attacked on the basis of the admission of the note. I agree with the majority opinion with respect to its discussion of the issue

some substantial degree of *relevance* to a material issue in the case." 490 F.2d at 767.

2. Evidence that a defendant lied to investigators may be admissible as evidence of his knowledge of guilt. *State v. Spica,* 389 S.W.2d 35, 53 (Mo. 1965); *State v. Burton,* 618 S.W.2d 199, 201 (Mo.App. E.D.1981); *State v. Ross,* 606 S.W.2d 416, 425 (Mo.App. E.D.1980). I am, however, aware of no cases making such evidence admissible regardless of whether it fits within one of the exceptions to the hearsay rule.

3. Proceedings concerning motions in limine or to suppress, however, are interlocutory in nature because matters may change between then and the time the issue arises at trial. *See State v. L*

about whether the trial court should have *sua sponte* recused.

____ R____, 896 S.W.2d 505, 508–509 (Mo.App. S.D.1995); *State v. Clements,* 849 S.W.2d 640, 645, n. 3 (Mo.App. S.D.1993).

4. Judge Shrum's concurring opinion suggests that I have overlooked the importance of a limiting instruction, citing *Brown,* 490 F.2d at 766, n. 25. I do not believe *Brown* stands for the proposition that the State has a duty to request a limiting instruction concerning evidence which it offers. As indicated in Judge Prewitt's dissent, a defendant may request such an instruction if there is a risk that evidence may be used for improper purposes.